**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 16 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

MARATHON ASHLAND PIPE LINE
LLC, and PLATTE PIPE LINE
COMPANY,

      Plaintiffs-Appellants,

v.

MARYLAND CASUALTY
COMPANY,

      Defendant-Appellee.

Nos. 98-8080
98-8081
98-8110
98-8114

---

Appeal from the United States District Court
for the District of Wyoming
(D.C. Nos. 97-CV-1037-J & 97-1039-J)

---

Peter Buscemi, of Morgan, Lewis & Bockius, LLP, Washington, D.C. (Mark A.
Srere, Morgan, Lewis & Bockius, LLP, Washington, D.C., and Richard E. Day
and Ann M. Rochelle, of Williams, Porter, Day & Neville, P.C., Casper,
Wyoming, with him on the briefs), for Plaintiffs-Appellants.

James C. Nielsen, of Wright, Robinson, Osthimer & Tatum, San Francisco,
California (J. Kent Rutledge, of Lathrop & Rutledge, P.C., Cheyenne, Wyoming,
with him on the briefs), for Defendant-Appellee.

---

Before **SEYMOUR**, **EBEL** and **HENRY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Marathon Ashland Pipe Line LLC and Platte Pipe Line Company (hereinafter collectively referred to as "Marathon")[1] appeal from the district court's grant of summary judgment in favor of Maryland Casualty Company on an insurance coverage dispute and Marathon's bad faith and assigned claims. Marathon also appeals several of the district court's discovery orders and its grant of costs to Maryland Casualty. After fully reviewing the record, we affirm in part, reverse in part, and remand.

# I

## BACKGROUND

Marathon is a Wyoming-based company that operates an energy pipeline and related properties. Marathon entered into a service contract with Steel Structures, Inc. ("SSI"), a building erection company, covering any work SSI would perform at Marathon's request. In addition to providing the terms for this work, the service contract required SSI to acquire a liability insurance policy and to name Marathon as an additional insured under that policy. Pursuant to this agreement, SSI endorsed Marathon as an additional insured on its commercial

---

[1]Marathon Ashland operates the petroleum pipeline owned by Platte Pipe Line Company. Although Platte filed a separate brief, its arguments mirror those of Marathon's, and we see no reason to treat these two entities separately for purposes of our disposition here. Those few times that these parties need to be considered separately, we do so.

general liability (CGL) policy with Maryland Casualty, which included a supplemental employer's liability insurance (SELI) provision. The policy provided for a $500,000 per accident limit on the CGL coverage, and a $1 million limit on the SELI coverage.

During the summer of 1996, Marathon requested that SSI hire Justis Berg, a seventeen-year old high school student, to work at Marathon's direction for the summer. The undisputed facts show that this type of arrangement was not an isolated event. Marathon had requested that SSI hire a specified individual as a temporary employee to work under Marathon's control and direction several times over the thirty-year term of their relationship. Under this arrangement, SSI hired Mr. Berg and paid his wages, tax withholdings, and workers' compensation premiums. Marathon directed and controlled all of Mr. Berg's work assignments, was responsible for his training and supervision, and reimbursed SSI's expenses related to Mr. Berg.

On June 28, 1996, while Mr. Berg was mowing a steep incline at Marathon's site in Casper, the front-loader he was driving overturned. After losing a leg and suffering other permanent injuries as a result of the accident, Mr. Berg tendered his claim as an injured SSI employee to Maryland Casualty. On October 1, Maryland Casualty denied his request for indemnification based on the CGL policy's workers' compensation and employee exclusions. This denial made

no mention of potential coverage under other provisions in the CGL policy applying to temporary workers.

In March 1997, Mr. Berg filed a personal injury action against Marathon, alleging that he was injured due to Marathon's negligence. Mr. Berg asserted he was hired by SSI pursuant to the contract with Marathon, "whereby Marathon agreed to compensate [SSI] in exchange for the right to exclusive use of Berg's services throughout the summer of 1996." App., Vol. 1 at 33, ¶ 9. On April 14, Marathon notified Maryland Casualty of the *Berg* suit, requesting a copy of the policy and a defense as an additional insured. Although Marilyn Griffith, a Maryland Casualty claims adjuster, left one telephone message with Marathon's counsel a few weeks later purporting to offer to share in defense costs with other insurers, Maryland Casualty did not respond in writing to Marathon's repeated requests to provide a defense until many months later, and never provided Marathon with a copy of the policy.

Marathon wrote the company again in late April stating there were no other insurers, demanding a defense, and requesting a copy of the policy. The letter warned that Marathon would sue SSI for breach of contract if Maryland Casualty's silence continued. Maryland Casualty did not respond. On May 23, Marathon filed a third-party complaint against SSI in the *Berg* suit, asserting that SSI was liable to Marathon for failing to procure insurance covering its liability

arising from SSI's operations, as required by the service contract. SSI tendered this complaint to Maryland Casualty and requested a defense. Maryland Casualty responded immediately, providing SSI with defense counsel from the law firm of Murane & Bostwick.

On July 15, after Maryland Casualty had still failed to respond to its inquiries, Marathon filed the present action against Maryland Casualty seeking a declaration that the SSI policy provides defense and indemnity coverage to Marathon and alleging a bad faith tort claim. On August 15, Maryland Casualty finally informed Marathon that it would defend the company in the *Berg* lawsuit under a reservation of rights as to coverage. Recognizing that Marathon had already procured its own defense counsel, Maryland Casualty requested that Marathon forward all of the bills it had already incurred. Marathon did not respond.

Marathon entered into settlement negotiations with Mr. Berg and SSI, ultimately settling with Mr. Berg for an undisclosed amount in late September. Marathon also settled with SSI, which confessed judgment for breach of the service contract provisions. SSI assigned to Marathon all of its rights against Maryland Casualty in exchange for Marathon's agreement not to enforce its confessed judgment against SSI.

In the present action, Marathon seeks a declaration that its liability to Mr.

Berg is covered under the CGL and SELI provisions of the policy, and that Maryland Casualty had a duty to defend Marathon in the *Berg* suit. In addition to these contractual claims, Marathon alleges Maryland Casualty acted in bad faith by its failure to defend and its delay in responding to Marathon's requests. Under the assignment of claims from SSI, Marathon also alleges Maryland Casualty acted in bad faith toward SSI by causing Marathon to sue SSI and by refusing to grant SSI permission to settle that action (hereinafter the "assigned claims").

Concluding there were no genuine issues of material fact, the district court granted Maryland Casualty summary judgment on all of Marathon's claims. The district court held that Marathon was not covered under the policy. *See Marathon Pipeline Co. v. Maryland Casualty Co.*, 5 F. Supp. 2d 1252, 1257 (D. Wyo. 1998). In subsequent orders, the district court also held that Maryland Casualty had no duty to defend Marathon in the *Berg* suit, and that as a result Marathon could not claim bad faith. With respect to the assigned claims, the court held that because Maryland Casualty fully defended SSI against Marathon's third-party complaint, Marathon as SSI's assignee could not assert bad faith against Maryland Casualty.

During the discovery phase, Marathon attempted to review Maryland's claims file and other documents which Maryland refused to reveal under a claim of attorney-client privilege. After reviewing the materials *in camera*, the district

-6-

court held they did not raise an issue of material fact and declared them non-discoverable. Finally, the court granted Maryland Casualty's request for deposition costs incurred during discovery.

Marathon appeals each of these rulings. We address each issue in turn. "We review the district court's grant of summary judgment de novo, applying the same legal standards used by that court. Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law." *Blackhawk-Central City Sanitation Dist. v. American Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1187-88 (10th Cir. 2000) (citations omitted). "[W]hen, as here, a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state." *Id.* The parties agree that Wyoming law governs our interpretation of the insurance policies. We review the district court's determination of Wyoming law *de novo. See id.*

## II

## COVERAGE

Under Wyoming law, interpretation of the insurance policy "is a question for the court to resolve as a matter of law." *State ex rel. Farmers Ins. Exch. v.*

*District Court of the Ninth Judicial Dist.,* 844 P.2d 1099, 1102 (Wyo. 1993).

The Wyoming Supreme Court has set forth several basic principles to follow.

*See id.* at 1101-02. First, the words used in the policy must be given their

"common and ordinary meaning," and must not be tortured to create an

ambiguity. *Id.* at 1101. Second, "[t]he intention of the parties is the primary

consideration and is to be ascertained, if possible, from the language employed in

the policy, viewed in the light of what the parties must reasonably have

intended." *Id.* The language "should not be so strictly construed as to thwart the

general object of the insurance," and, absent ambiguity, "the policy will be

enforced according to its terms." *Id.* at 1101-02. Finally, where policy language

is "ambiguous and uncertain" or "fairly susceptible of two constructions," the

interpretation "favorable to the insured will be adopted." *Id.* at 1102 (citations

omitted).

### A. *Coverage under the Endorsement*

The endorsement provision modifying SSI's policy to include Marathon as

an additional insured provides that: "WHO IS AN INSURED (Section II) is

amended to include as an insured the person or organization shown in the

Schedule, but only with respect to liability arising out of your ongoing operations

performed for that insured." App., Vol. 1 at 205. Marathon was listed in the

Schedule as follows:

SCHEDULE

Name of Person or Organization:
  MARATHON PIPELINE
  ATN: LISA MERSHAD
  P.O. BOX 4816
  HOUSTON, TX  77253-4816

 RE:  BUILDING ERECTION

*Id.*[2]

The district court granted summary judgment to Maryland Casualty on the coverage issue, holding Marathon did not qualify as an additional insured under these facts.  The court first rejected Maryland Casualty's argument that Marathon was only an additional insured for operations relating to building erection, holding instead that all of SSI's operations, including hiring Mr. Berg and giving Marathon the exclusive use of his services, were covered.  However, the court interpreted the contract language to require negligence on the part of the named insured before coverage is triggered.  Because SSI, the named insured, was not the alleged negligent party, the court held the endorsement provision did not

---

[2]Platte Pipe Line's endorsement language is somewhat different.  It limits coverage to "liability arising out of 'your work' for that insured by or for you," and the listing in the Schedule under Platte's name and contact address describing SSI's operations is stated as "PROJECT:  ERECTING BUILDING & REMODELING OLD BUILDINGS."  App., Vol. 1 at 195.

apply. *See Marathon* , 5 F. Supp. 2d at 1257 (holding that because SSI's duties with respect to Mr. Berg were carried out competently, the initial condition bringing Marathon under policy as additional insured remained unmet). In its denial of Marathon's motion to reconsider, the district court further clarified that this final conclusion was based on the undisputed fact that Marathon, not SSI, controlled every aspect of Mr. Berg's work, including the initial decision to hire him. *See* Order Denying Motion to Reconsider, App., Vol. 1 at 918. The court reaffirmed its original holding that Mr. Berg's injuries did not arise out of SSI's ongoing activities for Marathon. *See id.* at 920. After reviewing the undisputed facts and applying Wyoming law, we disagree. We conclude that Marathon qualifies as an additional insured under the endorsement for its liability to Mr. Berg.

Initially, we agree with the district court that the language "RE: BUILDING ERECTION" under Marathon's name and address does not limit Marathon's coverage as an additional insured to those activities relating solely to SSI's construction of buildings for Marathon. According to Maryland Casualty, because Mr. Berg was not involved in constructing buildings when he was injured, the endorsement provision did not cover Marathon's subsequent liability. As the district court aptly noted, "an obscure reference to the primary insured's business description . . . does not adequately inform an additional insured of the

potential limitation." *Marathon*, 5 F. Supp. 2d at 1255.

We also agree with the district court that the placement of this reference under the heading "name and organization," and not in some other prominent location where limitations to the endorsement attach, cannot limit coverage. *See id.* This is particularly true given the fact that this reference is not printed in the section limiting coverage to Marathon's liability arising out of SSI's ongoing operations, the only language plainly limiting coverage under the endorsement. Although Maryland Casualty argues that disregarding this language renders it meaningless, whether this language was intended by the parties to be a limitation is at the very least ambiguous and thus must be read in favor of Marathon. *See Ulrich v. United Serv. Auto. Ass'n.*, 839 P.2d 942, 948 (Wyo. 1992).

Maryland Casualty contends that because SSI's operations are described as the erection of buildings, its conduct in providing Mr. Berg's services was not an "ongoing operation" within the meaning of the endorsement, and Marathon therefore does not qualify as an additional insured under these facts. Because an "ongoing operation" is undefined in the policy, we look to the common and ordinary meaning of the words to determine whether SSI's conduct here can be so classified. *See Farmers Ins. Exch.*, 844 P.2d at 1101.

The dictionary defines "ongoing," when used as an adjective, as "that [which] is going on; that [which] is actually in progress." *Webster's Third New*

*International Dictionary*   (Unabridged 2000) at 1576.  "Operations" is defined as

"a doing or performing esp[ecially] of action."        *Id.* at 1581.  The common and

ordinary meaning of this phrase is that a company's "ongoing operation" is

simply those things that the company does, as opposed to the meaning suggested

by Maryland Casualty which would limit "ongoing operations" to mean only the

core or most prominent operations that a company might undertake.        [3]

The undisputed facts show that SSI's ongoing operations included hiring

specified individuals at Marathon's request to work under Marathon's sole

direction and control.    *See* Dep. of Randy Farmer, President of SSI, App., Vol. 1

at 258-60 (describing similar arrangements over the past thirty years); Dep. of

---

[3]We note that in Platte's endorsement, instead of limiting coverage to SSI's "ongoing operations," the language limits coverage to liability arising out of "your work" for Platte.  In contrast to "ongoing operations," "your work" is defined in the policy.  That definition, however, is circular:

"Your work" means:
a.      work or operations performed by you or on your behalf; and
b.      Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:
a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
b.      The providing of or failure to provide warnings or instructions.

App., Vol. 1 at 218.  This definition of "your work" is similarly not limited to certain SSI activities, but may include SSI's activity of providing individuals to work under Marathon's direction and control because the phrase is redundantly defined as meaning "work or operations performed by you."

Dean Dick, Marathon employee, App., Vol. 1 at 268 (SSI provided temporary workers for Marathon's use to perform general roustabout work); Dep. of Marilyn Griffith, Maryland Casualty Claims Adjuster, App., Vol. 4 at 1066 (SSI informed her that it had been loaning employees to other business entities for over twenty years). The occasional nature of this activity does not negate the fact that it was an "ongoing operation" for SSI. [4] Given that Maryland Casualty chose not to define this term as limited to the named insured's most frequent or core operations, the common and ordinary meaning of the words informs a reasonable insured in Marathon's position that the endorsement covers risks associated with SSI's activity of hiring and paying individuals who worked solely under Marathon's control. At the very least, this limitation is ambiguous as to whether the parties intended to cover the risks associated with SSI's activities in this regard and therefore must be read in favor of the insured.

Although we have agreed with the district court thus far, we reject its

---

[4]In an effort to show this was Marathon's operation rather than SSI's, Maryland Casualty points out Marathon requested that SSI hire Mr. Berg and that Marathon reimbursed SSI for the expenses incurred in doing so. However, the fact that SSI was ultimately reimbursed by Marathon for Mr. Berg's services has no effect on whether Mr. Berg's presence was due to SSI's or Marathon's operations. A subcontractor is always rewarded for its services in some way, which in turn finances its ability to pay those who perform the service. Moreover, the fact that Marathon approached SSI and requested that it hire Mr. Berg does not undermine the causal connection between SSI's fulfilling that request and Mr. Berg's injuries.

holding that Marathon's liability did not "arise out of" SSI's activities.  Our review of the undisputed facts convinces us there was a sufficient causal connection between SSI's operations and Mr. Berg's injuries to trigger the additional insured endorsement.  Under Wyoming law, "arising out of" language as used in insurance contracts carries a "natural consequence" level of causation. *Worthington v. State*, 598 P.2d 796, 807 (Wyo. 1979) (interpreting automobile insurance policy providing coverage for liability "arising out of" use of a vehicle); *see also Ulrich*, 839 P.2d at 949 (reaffirming *Worthington*).  Applying this standard, Marathon's liability must be "the natural and reasonable incident or consequence of" SSI's ongoing operations for Marathon, "the causal connection being reasonably apparent."  *Id.*  Coverage will not lie, however, if Marathon's liability "was directly caused by some independent or intervening cause wholly disassociated from, independent of or remote from" SSI's operations for Marathon.  *Id.* at 948 (quoting *Worthington*, 598 P.2d at 807).  Therein lies the real crux of this dispute:  while Marathon argues that Mr. Berg's injuries arose out of SSI's activity of employing persons who worked at Marathon's direction and control, Maryland Casualty contends that Mr. Berg's injuries arose solely out of Marathon's activities, independent and remote from SSI's operations.  Because the "arising out of" language is "plain and unequivocal," this is a question of law for this court to resolve.  *See Farmers Ins. Exch.*, 844 P.2d at 1102.

-14-

In the district court's initial published order, it relied on the fact that Mr. Berg was Marathon's employee for concluding that his injuries did not arise out of any of SSI's operations. *See Marathon*, 5 F. Supp. 2d at 1257. In its denial of Marathon's motion to reconsider, the court clarified that this conclusion was based on the undisputed fact that Marathon, not SSI, controlled every aspect of Mr. Berg's work, including the hiring decision. *See* App., Vol. 4 at 920. While the district court described its original reliance on Mr. Berg's employment status as "used for illustrative purposes" and as "perhaps overbroad," *id. at* 918, it reaffirmed its original position by stating "there was only one arguable basis for finding the liability could have arisen out of [SSI]'s ongoing operations for Marathon; namely, that Berg was an employee of SSI." *Id.* We have a different view of the matter.

Mr. Berg's employment status is largely immaterial to whether his presence on Marathon's site arose out of SSI's ongoing operations. What is material, and indeed decisive, is that Mr. Berg was present and working at Marathon's site due to SSI's agreement with Marathon to hire and pay individuals who were to work at Marathon's complete direction and control. Moreover, it was foreseeable that such individuals could be hurt as a result of Marathon's negligence. We are persuaded that SSI's act of hiring and paying Mr. Berg at Marathon's request and then sending him out to work under Marathon's sole direction and control was an

-15-

ongoing operation out of which Mr. Berg's injuries were a natural consequence. We therefore disagree with the district court's ruling that Marathon was not an additional insured for purposes of its liability to Mr. Berg.

Finally, Maryland Casualty asserts that the named insured must be primarily negligent, with the additional insured no more than vicariously liable, for this endorsement provision to apply. Under this theory, Mr. Berg's injuries did not arise out of SSI's operations because SSI was not negligent. We have held, however, that an endorsement provision with identical language provides coverage for an additional insured's liability arising out of its own negligence. *See McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251 (10th Cir. 1993) (applying Kansas law). In *McIntosh*, we were faced with the same additional insured endorsement provision at issue here and concluded the language was "ambiguous as to whose negligence is covered and whose negligence is excluded from coverage." *Id.* at 254. We therefore interpreted the policy as providing coverage for the additional insured's liability arising out of its sole negligence. *Id.* This appears to be the majority rule. *Accord Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 499 (5th Cir. 2000) (rejecting argument that identical policy language limited endorsement's coverage to additional insured's liability arising from named insured's negligence); *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451 (Tex. Ct. App. 1st Dist. 1999) (interpreting identical policy language

-16-

and holding that coverage provided for additional insured's sole negligence resulting in injuries to named insured's employee) (citing *McIntosh* holding as the majority rule); *Acceptance Ins. Co. v. Syufy Enterprises*, 81 Cal. Rptr. 2d 557, 561-62 (Cal. App. Ct. 1999) (identical policy language does not allocate coverage based on named insured's fault). *See also* Lisa Oonk, *The Construction Industry: Coverage Issue Created by Claims Against Additional Insureds*, 28 B RIEF 8, 11 (Summer 1999) (citing *McIntosh* as illustrative of majority rule and noting that "many cases flat out reject arguments that coverage does not exist if the additional insured's liability arises from its own conduct or negligence."). We are not persuaded the language presented here is clearer on that point, and we conclude this policy language does not limit coverage to the additional insured's vicarious liability. [5] Moreover, we believe the Wyoming Supreme Court would

_____

[5]We reject Maryland Casualty's argument that the intent of an additional insured endorsement is to "provide protection where the named insured, performing a job for the additional insured, blunders." Brief for Appellee at 26. Where the additional insured is held no more than vicariously liable for the acts of the named insured, the additional insured would have an action for indemnity against the primary wrongdoer. "Thus, an endorsement that provides coverage only for the additional insured's vicarious liability may be illusory and provide no coverage at all." Douglas R. Richmond & Darren S. Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds*, 44 DRAKE L. REV. 781, 806 (1996). In this light, it is obvious that additional insureds expect more from an endorsement clause than mere protection from vicarious liability.

We also reject Maryland Casualty's citation to the underlying service contract to determine whether Marathon's own negligence was intended to be covered by this endorsement. Under Wyoming law, the policy must be interpreted and enforced according to its own terms. *See Farmers Ins. Exch.*, 844 P.2d at

adopt this view as Wyoming law.

In summary, we hold that Mr. Berg's injuries arose out of SSI's operations because Mr. Berg's presence at the Casper site was a natural consequence of SSI's activity of hiring him and paying his salary while releasing him to Marathon's control. Marathon therefore qualifies as an additional insured under the policy.

## B. Coverage under the policy provisions

Maryland Casualty contends that even if Marathon qualifies as an additional insured, the policy's use of "you" makes it clear that named insureds and additional insureds are provided different coverage. Maryland Casualty argues that "you" refers only to the named insured, whereas "insured" refers to all other insureds under the policy, including Marathon. To support this argument, Maryland Casualty relies on the preamble's language which states, "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." App., Vol. 1 at 207. According to Maryland Casualty, all of

1101-02; *see also Container Corp. of Am. v. Maryland Cas. Co.*, 707 So.2d 733, 735 (Fla. 1998) (contractual language in indemnity contract between subcontractor and general contractor not dispositive of insurance coverage issue; language of insurance policy controls).

the provisions, exclusions, and definitions within the policy which use the term "you" apply only to named insureds. For example, the SELI provision provides coverage for "all sums which you shall become legally obligated to pay as damages because of bodily injury by accident . . . sustained . . . by any employee of yours." App., Vol. I at 202.

The district court rejected Maryland Casualty's argument on this point concluding that additional insureds qualify as named insureds under the policy, and therefore "you" refers to additional insureds like Marathon, providing the same coverage as a named insured. *See Marathon*, 5 F. Supp. 2d at 1255-56. We agree with the district court's determination for all the reasons stated in its opinion, and we add a few of our own.

At a minimum, the use of "you" in the policy is ambiguous as to whether it refers to additional insureds and, as such, must be interpreted in their favor.[6] Under the policy language and in the Marathon endorsement, it is not clear that

---

[6] We note that Maryland Casualty's argument has not fared well in insurance cases across the country. *See, e.g.*, *Prisco Serena Sturm Architects, Ltd. v. Liberty Mutual Ins.*, 126 F.3d 886, 892 (7th Cir. 1997) (interpreting same policy language, rejecting insurer's argument that "your" refers only to named insured); *Wyner v. North American Specialty Ins. Co*, 78 F.3d 752, 756 (1st Cir. 1996) (rejecting additional insured's argument that "you" as used throughout policy only applied to named insured); *K&W Builders, Inc. v. Merchants & Business Men's Mutual Ins. Co.*, 495 S.E.2d 473, 476 (Va. 1998) (interpreting same preamble language and holding "you" as used in policy referred to additional insureds).

"you" as used in the policy excludes additional insureds. The endorsement adding Marathon as an additional insured stated that " WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule ." App., Vol. 1 at 195. This amendment, by its own language, adds Marathon as an "insured," and does not relegate it to a lesser status than named insureds under the policy. Moreover, Section II does not define classes of insureds in terms of lesser or greater coverage. Instead, it describes which persons related to the insured are included under the policy. In paragraph 1 of Section II, for example, the policy reads: "if *you* are designated in the Declarations as an organization . . . *you* are an insured. *Your* 'executive officers' and directors are insureds, but only with respect to their duties as *your* officers or directors." App., Vol. 1 at 212, ¶ 1c (emphasis added). Reading the policy as excluding additional insureds everywhere the word "you" is employed would make the policy's coverage amorphous, leaving additional insureds open to all sorts of unanticipated exclusions. "The purpose of provisions to add insureds is 'to extend the policy coverage to others . . . not to change the nature of th[e] coverage.'" *Wyner*, 78 F.3d at 756 (quoting *Sonoco v. Travelers Indem. Co.*, 315 F.2d 126, 128 (10th Cir. 1963)).

The mere use of the word "you" in connection with the entire policy also does not place additional insureds on notice that they are excluded from its

-20-

provisions. Surely Maryland Casualty could have included a plain statement in the endorsement that additional insureds were to be treated differently under the policy than named insureds through the use of the word "you." Alternatively, Maryland Casualty could have included a plain statement in the preamble, in Section II, or in the endorsement specifying that additional insureds do not qualify as named insureds. Absent such a clear exclusion, the policy is at least ambiguous whether "you" includes endorsed additional insureds.

The preamble pointed to by Maryland Casualty does not convince us otherwise. That preamble states that "'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." App., Vol. 1 at 207. The entire policy, read as a whole, is ambiguous as to whether this language differentiates an additional insured such as Marathon from a named insured. We agree with Marathon that the endorsement can reasonably be interpreted as qualifying Marathon as a named insured, and therefore including Marathon within the scope of "you" as used in the policy. [7] *See, e.g.*, *Greene v. General Cas. Co.*, 576 N.W.2d 56, 60 (Wis. Ct. App. 1997) (common sense reading of

---

[7]While the policy does provide another way for an entity to "qualify as a Named Insured," it is not clear from the policy that this is the only way to qualify. *See* App., Vol. 1 at 212, ¶ 4 (stating that any organization newly acquired or formed is covered as a Named Insured).

-21-

similar preamble is that named insured has been expanded to include additional insured, and thus "you" as used throughout policy referred to additional insured).

We asked the parties to submit additional briefing on the Wyoming Supreme Court's recent determination in *Page v. Mountain West Farm Bureau Mut. Ins. Co.*, 2 P.3d 506 (Wyo. 2000). In *Page*, the court interpreted a farm and ranch insurance policy and concluded that "you" as used in the policy referred only to the named insureds, Mr. and Mrs. Page, and did not include the Pages' employees who were covered as omnibus insureds under the policy. *See id.* at 509. In *Page*, however, the court's holding was premised on its conclusion that the policy language was unambiguous in its use of "you" as referring only to the Pages. *See id.* ("[a] careful reading of the policy leads to the ineluctable conclusion that . . . 'you' and 'your' refer only to the [Pages"]. The policy in *Page* did not define "you" to include "any other person or organization qualifying as a Named Insured." *Compare* Preamble, App., Vol. 1 at 207, *with Page*, 2 P.3d at 508. Because we hold that the language adding Marathon as an insured is ambiguous as to whether it expands the named insured category to include Marathon for purposes of the policy's use of "you," the Wyoming Supreme Court's determination in *Page* is inapposite.

Given our conclusion that "you" includes Marathon, Maryland Casualty's contention that the supplemental employer's liability insurance provision does

not cover Marathon is without merit.  Maryland Casualty presents no other reason why the SELI coverage would not apply.    [8]   While it is hotly contested between the parties whether Mr. Berg was an employee of SSI, none of the parties contests the fact that Mr. Berg was an employee of Marathon.  We therefore accept as undisputed that Mr. Berg was a Marathon employee for purposes of coverage. *See Marathon* , 5 F. Supp. 2d at 1257 (stating as a prior adjudicated fact that Marathon was Berg's employer).  We hold that the SELI provision covers Marathon for Mr. Berg's injuries.

## C.  *Discharge of Maryland Casualty's coverage obligations*

Maryland Casualty argues on appeal that even if it owed a duty to Marathon, that duty was discharged completely by Marathon's "flat rejections" of Maryland Casualty's offer to defend Marathon and its rejection of Maryland Casualty's offer of the SELI limits "shortly" after the         *Berg* settlement conference. Aplee. Br. at 40, 46.  We reject this argument because Maryland Casualty's offer to perform was untimely and therefore insufficient to discharge its duty to

---

[8]Because Marathon did not pay Mr. Berg's workers' compensation premiums, none of the parties contends that Marathon's claim is excluded under the workers' compensation provision, App., Vol. 1 at 203, exclusion (e). *See generally* Eric Mills Holmes & Mark S. Rhodes, *Appleman's on Insurance* § 1.17 at 83 (2d ed. 1996) (noting that "employers' liability insurance is intended to apply only when the insured employer is not subject to workers' compensation law").

Marathon.

On April 14, 1997, Marathon notified Maryland Casualty of the *Berg* litigation and demanded that Maryland Casualty provide Marathon with a defense. App. vol. 1 at 104-05. Maryland Casualty did not respond to this demand until its letter of August 15, 1997. In that letter, Maryland Casualty notified Marathon that Maryland Casualty believed it had neither a duty to defend nor a duty to indemnify Marathon, but would defend the company under a "reservation of rights." *Id.* at 240, 247-48. On October 6, 1997, Maryland Casualty wrote a second letter to Marathon in which it reaffirmed its earlier conclusions regarding its duty to defend or indemnify Marathon and added only that it believed that SELI coverage might not apply to Marathon. *See id.* at 249, 250.

Maryland Casualty's letters to Marathon in both August and October of 1997 were untimely under Wyoming law. *See* WYO. STAT. ANN. § 26-15-124 (Michie 1977). Under section 26-15-124, an insurance company has only 45 days in which to decide whether it will defend or indemnify an insured. *See id.* This court has held that when an insurer fails to decide a claim within Wyoming's 45-day statutory time limit, "its failure to do so constitute[s] a refusal to pay," even if the insurer later attempts to cure that breach. *Smith v. Equitable Life Assurance Soc'y*, 614 F.2d 720, 722 (10th Cir. 1980). Since Marathon notified

Maryland Casualty of the *Berg* litigation on April 15, 1997, Maryland Casualty's response was due to Marathon by June 1. That limit was far exceeded by Maryland Casualty, which did not respond until 125 days had passed. Maryland Casualty's attempt to cure its failure to respond by offering to defend Marathon under a reservation of rights did not cure this breach. Although Maryland Casualty argues that, under a variety of standards, its response time was reasonable, those arguments are not persuasive given the existence of an express statutory time limit.

In accordance with Wyoming law, we hold that when Maryland Casualty gave the untimely notice that it would only cover Marathon under a reservation of rights, Marathon's rejection did not waive coverage and Maryland Casualty's coverage defenses are disallowed. [9]

## II

## DUTY TO DEFEND

The SELI provision obligated Maryland Casualty to defend suits brought

---

[9]The coverage provided by the SELI provision is limited to "each accident" and is "in lieu of and shall not be cumulative with any limit of liability stated elsewhere in the policy." App., Vol. 1 at 203. Because we hold Marathon is covered under the SELI provision, it is unnecessary to determine whether the CGL provision provides coverage as well, or whether Platte is covered under some other provision.

against an insured by an employee claiming damages for bodily injury by accident arising out of his employment with the insured. Comparing the allegations in the *Berg* complaint to the policy's provisions, the district court concluded that Maryland Casualty had no duty to defend Marathon in the *Berg* suit for substantially the same reasons it held there was no coverage. *See* App., Vol. 4 at 969 (granting Maryland Casualty summary judgment on contract claim "because the complaint does not allege facts showing liability arising out of SSI ongoing operations performed for Marathon"). Marathon appeals this order.

It is a well-settled principle of insurance law in Wyoming as elsewhere that "the duty of the insurer to defend is more extensive than its duty to indemnify the insured." *Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510, 513 (Wyo. 2000); *see also First Wyoming Bank v. Continental Ins. Co.,* 860 P.2d 1094, 1097-98 (Wyo. 1993); 46 C.J.S. Ins. § 1145(a) ("The insurance company owes its insured a duty to defend actions brought against its insured; such duty is broader than the company's duty to indemnify . . ."). The duty to defend is a "separate and distinct" contractual requirement under the policy. *First Wyoming Bank*, 860 P.2d at 1073; *see also* 46 C.J.S. Ins. § 1145(a) and (c). Whether Maryland Casualty had a duty to defend Marathon in the *Berg* litigation is determined not by an analysis of the insurer's ultimate obligation to indemnify the insured "but rather by examining the facts alleged in the complaint that the

claim is based upon." *Shoshone First Bank*, 2 P.3d at 513; *see also Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1061 n.2 (Wyo. 1980). "The insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage." *Shoshone First Bank*, 2 P.3d at 513; *see also Hutchinson Oil Co. v. Federated Serv. Ins. Co.*, 851 F.Supp. 1546, 1553 (D.Wyo.1994) (quoting *Axton Cross Co. v. Lumbermen's Mut. Cas. Co.*, 176 A.D.2d 482, 574 N.Y.S.2d 561, 562 (N.Y. App. Div. 1991)). If there be any doubt as to whether the insurance company need defend the insured, that doubt must be resolved in favor of the insured. *First Wyoming Bank*, 860 P.2d at 1095; *see also* 46 C.J.S. Ins. § 1145(a). The *Berg* complaint, naming Marathon as a defendant, alleged that Mr. Berg was "hired as a summer laborer by [SSI]," and that SSI paid his workers' compensation premiums. App., Vol. 1 at 33, ¶ 8. The complaint further alleged that SSI hired Mr. Berg "pursuant to a contract with Marathon, whereby Marathon agreed to compensate [SSI] in exchange for the right to exclusive use of Berg's services throughout the summer of 1996." *Id.* at ¶ 9. Mr. Berg also asserted a claim for negligence against Marathon resulting in bodily injury during the course of his employment. Marathon argues that these allegations establish a potential for coverage under the additional insured endorsement and the SELI provision or, at the very least, that any doubts should have been resolved in its favor. We agree.

-27-

The policy provisions as set out above endorsed Marathon as an additional insured for its liability arising out of SSI's work for Marathon. The complaint alleges that SSI hired Mr. Berg and granted Marathon the exclusive use of his services pursuant to a contract with Marathon. These allegations certainly raised the strong possibility that any liability on the part of Marathon would arise out of SSI's operations for Marathon. The allegations also demonstrate that Mr. Berg was an employee of either Marathon, SSI, or both. Finally, the complaint stated that SSI paid Mr. Berg's workers' compensation premiums, thereby alerting Maryland Casualty that the workers' compensation exclusion might not apply to Marathon. Each of these claims "is potentially covered under the policy." *Shoshone First Bank*, 2 P.3d at 514; *First Wyoming Bank*, 860 P.2d at 1099-1100. Since "the claim, liberally construed, is within the embrace of the policy, the insurer must defend." *Hutchinson Oil Co.,* 851 F. Supp. at 1553 (quoting *Axtan Cross Co. Inc.*, 574 N.Y.S.2d at 562 (N.Y. App. Div. 1991)).

In a case somewhat similar to the instant one, the Wyoming Supreme Court recognized that "as a general rule . . . the insurer is obligated to defend if there is potentially a case under the complaint within the coverage of the policy." *Boston Ins. Co. v. Maddux Well Serv.*, 459 P.2d 777, 779 (Wyo. 1967). In that case, a fire broke out at a well which was owned by Belco but was being serviced by Maddux at the time of the fire. Two Maddux employees were injured and

Maddux paid them workers' compensation as required by Wyoming law. Subsequently, the two employees sued Belco for negligence. Belco responded by filing a third-party claim against Maddux, seeking indemnification for any judgments against Belco obtained in the negligence case. Belco alleged that it was not negligent and that any negligence was due entirely to the actions of Maddux. Maddux's insurance company refused to defend Maddux against the third-party claim. The Wyoming Supreme Court examined the pleadings in the case and concluded that the third-party complaint was a case against Maddux, that the suit by the two employees against Belco alleged bodily injury, and that Belco claimed that Maddux alone was responsible for any injuries to the two employees. *Id.* at 778-779. The Court held that these three facts, when compared with the plain language of the insurance policy, were sufficient to trigger a duty to defend on the part of the insurance company, regardless of the ultimate merit outcome of the proceedings. *Id.* at 780.

Maryland Casualty argued to the district court that Mr. Berg's failure to allege SSI's negligence or to allege his injuries resulted from any activities associated with erecting buildings negated any potential for coverage. We have rejected this reading of the policy. *See supra*, Part I.A. While Maryland Casualty may have had doubts as to whether there was a duty to defend Marathon, those doubts should have been resolved in Marathon's favor in

-29-

accordance with Wyoming law. *See First Wyoming Bank*, 860 P.2d at 1095. In light of the allegations in the Berg complaint, we conclude the potential for coverage was apparent and Maryland Casualty therefore had a duty to defend Marathon in the that suit.

Citing *Glenn Estess*, 763 F.2d 1237, Maryland Casualty argues alternatively that any duty to defend was discharged both by its offer on August 15 to defend Marathon under a reservation of rights, and by Marathon's subsequent failure to send its bills for costs incurred. Maryland Casualty's belated offer, five months after the Berg suit was filed against Marathon, was insufficient to discharge its duty to defend for the same reasons that its offer to fund the settlement did not discharge it of its duties under the SELI provision. *See supra*, Part I.C. This offer was made three weeks after Marathon had instituted the present suit seeking a declaration that Maryland Casualty had a duty to defend. Under all of these circumstances, Marathon was not forced to choose between forwarding all of its legal bills or facing termination of Maryland Casualty's defense duties.

## III

## BAD FAITH

In claims IV and V of the amended complaint, Marathon asserted a bad

faith cause of action against Maryland Casualty for its handling of Marathon's claim. Marathon alleged two separate instances of bad faith. The first concerned Maryland Casualty's refusal to defend Marathon in the *Berg* case where its duty to do so was not "fairly debatable." The second stemmed from Maryland Casualty's refusal to respond, in a timely manner, either to Marathon's repeated demands for a defense or to its numerous requests for a copy of the insurance policy, thereby forcing Marathon to sue SSI in the *Berg* litigation and to file the present action against Maryland Casualty. The district court granted summary judgment to Maryland Casualty on this cause of action, concluding that neither instance cited by Marathon constituted bad faith. Marathon contends the grant of summary judgment was in error, and we agree.

The district court did not deal squarely with the bad faith cause of action because it failed to recognize that this claim was distinct from Marathon's contractual claim against Maryland Casualty and accordingly required different legal analysis. Instead, the district court erroneously applied a contract analysis to the bad faith claim. Marathon's contractual claim was a coverage claim -- a claim that Maryland Casualty owed Marathon a defense because Marathon was an additional insured under the SSI policy. We dealt with that claim in Section II of this opinion. In its order disposing of the bad faith claim, the district court applied the analysis appropriate for a coverage dispute, comparing the allegations

contained in the *Berg* complaint with the insurance policy provisions in order to determine whether Maryland Casualty had a *contractual* duty to defend Marathon. *See* App., vol. 4 at 961. Concluding that Maryland Casualty owed Marathon no contractual duty to defend, the district court held there was no bad faith.

As we have pointed out, however, a bad faith claim requires an entirely separate analysis from a contractual claim. Bad faith claims are a species of tort law, not of contract law. They constitute a violation of the insurer's separate, non-contractual, "duty to process claims fairly and in good faith." 46A C.J.S. Ins. § 1342. Under Wyoming law, a bad faith claim is an independent tort action based on the theory that insurers owe a duty of good faith to policyholders not to unreasonably deny a claim for benefits under the policy. *See McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 857-58 (Wyo. 1990); *see also* 46A C.J.S. Ins. § 1580. That bad faith tort action is known in Wyoming as "the tort of violation of the duty of good faith and fair dealing." *Id.* at 855; *see also Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992). In order to prevail, the insured must prove that the denial of his claim by the insurer was not "fairly debatable," which is an objective standard. *McCullough*, 789 P.2d at 860; *see also* 46A C.J.S. Ins. § 1580. Namely, the insured must prove the insurer did not properly investigate and develop the claim or recklessly ignored or disregarded the claim. *See*

*McCullough*, 789 P.2d at 860. Further, the insured must prove that there is no reasonable basis for denying the benefits of the policy, and that the insurer knew of or recklessly disregarded the lack of a reasonable basis for the denial. *See id.* The standard to be employed by a jury in evaluating the insured's argument that the claim was not "fairly debatable" is that of a reasonable insurer – i.e., would a reasonable insurer under the circumstances have denied or delayed payment? *Id.*; *See also* 46A C.J.S. Ins. § 1580.

Since its initial ruling in *McCullough*, the Wyoming Supreme Court has expanded its definition of this tort to include a second kind of bad faith described as "oppressive or intimidating claims practices." *Hatch v. State Farm Fire & Cas. Co.*, 842 P.2d 1089, 1099 (Wyo. 1992). In *Hatch*, the court held that even if the insurer can prove its denial of the claim was legitimate because the claim was fairly debatable, the insured may still prevail on its bad faith claim if he can demonstrate that the insurer's investigation, handling and denial of the claim violated the implied covenant of good faith and fair dealing.

*Hatch* underscores the difference between the bad faith tort and the contractual claims. Even if an insured loses the underlying contractual claim, he may still prevail on the bad faith tort claim because the tort claim is essentially a "due process" type of claim which is concerned with the insurer's conduct in handling the insured's claim. *Id.* at 1099. This is so because "the duty of good

faith and fair dealing emanates from the special relationship of the parties to the insurance contract, not from the express or implied provisions contained in the contract." *Id.* at 1099. Indeed, even if an insurer subsequently pays the claim in full, that does not extinguish the insured's bad faith tort claim. *See Darlow v. Farmers Ins. Exch.*, 822 P.2d 820, 826 (Wyo. 1991).

In light of Wyoming law, it is apparent that the district court's grant of summary judgment to Maryland Casualty was based on an incorrect legal analysis. Moreover, we are persuaded that summary judgment was inappropriate given the facts pled by Marathon regarding Maryland Casualty's handling of its claim. We turn now to an analysis of this issue.

As we have discussed, the Wyoming Supreme Court has identified two ways by which an insurer can violate the duty of good faith and fair dealing: by "unreasonable denial" of a claim by an insurer where that claim is not "fairly debatable," and by employement of "oppressive or intimidating claims practices" in handling the insured's claim. Marathon alleges that Maryland Casualty committed both kinds of bad faith. We deal with each in turn.

Marathon contends Maryland Casualty unreasonably denied its request to be provided with a defense in the *Berg* litigation. Since we have already determined that Maryland Casualty owed Marathon that defense, the question is

whether that duty to defend was "fairly debatable" at the time. [10] One

consideration is whether the insurer "properly investigated and developed" the

claim or "recklessly ignored and disregarded" it. *McCullough*, 789 P.2d at 860.

Here, Maryland Casualty repeatedly refused to respond to Marathon's tender of

the *Berg* complaint and demands for a defense. Maryland Casualty's only

response to this assertion is that Ms. Griffith, its claims adjuster, left a telephone

message with Marathon's counsel. Several letters written by Marathon after its

initial tender and demand for a defense did not mention this phone call and

continuted to request a response from Maryland Casualty. These letters warned

of an impending suit against SSI and Maryland Casualty if the latter's

unresponsiveness continued. *See* App., vol. 1 at 110. These letters also informed

Maryland Casualty that Marathon and Platte had no other insurers. It is

undisputed that the letters went unanswered over a four-month period. Under

these circumstances, we believe Marathon has, at minimum, raised a triable issue

on whether Maryland Casualty "recklessly ignored or disregarded" its requests

for a defense, in which event Maryland Casualty's duty to defend would not be

"fairly debatable."

Marathon's second bad faith argument concerns Maryland Casualty's

---

[10]Marathon does not claim Maryland Casualty was in bad faith for refusing or delaying the payment of its claim, apparently in recognition that coverage itself was "fairly debatable."

"oppressive or intimidating claims practices." Marathon asserts that Maryland Casualty's failure to respond to Marathon's repeated requests for a copy of the insurance policy and for a defense in the *Berg* suit forced Marathon to file suit against both SSI and Maryland Casualty. It is undisputed that Maryland Casualty failed to respond in writing to Marathon's tender until after Marathon filed suit. In *Hatch*, which dealt with this type of bad faith claim, the Wyoming Supreme Court listed several examples of "oppressive or intimidating claims practices." These included delay of payment, an insurer's failure to respond to an insured's request for clarification of its rights under the policy, and conduct which forces insureds to litigate. *See Hatch*, 842 P.2d at 1097. Maryland Casualty engaged in exactly the kind of claims handling practices that the *Hatch* court found constituted bad faith. Maryland Casualty's only defense to this conduct is that it was pursuing a coverage opinion from its counsel before responding to Marathon. Aside from the fact that Maryland Casualty did not seek such an opinion for over a month after Marathon tendered its claim, Wyoming law plainly requires insurers to either accept and pay or reject an insured's claim within 45 days of receipt as we have said. *See supra* Part I.C. If an insurer does not comply with the statute, the insurer's actions are deemed a refusal to pay. [11] *See Smith*, 614

[11]Maryland Casualty's contention that section 26-15-124 does not apply to this claim because it was not made by a named insured and was not supported by evidence is without merit. First, only subsection (c) granting attorneys fees and

F.2d at 722. Given Maryland Casualty's violation of its statutory obligations as well as its conduct in handling Marathon's claim, the district court erred in granting summary judgment to it. [12]

# IV

## EIGHTH AND NINTH CLAIMS

After settlement of the *Berg* suit, Marathon amended its complaint to add an eighth and ninth claim against Maryland Casualty. The eighth claim was based on SSI's assignment of rights to Marathon and alleged that Maryland Casualty acted in bad faith toward SSI in the following ways: causing SSI to be sued by Marathon because of Maryland Casualty's lack of response to Marathon's requests; hiring a conflicted attorney to represent SSI without revealing that conflict; defending SSI without discussing the possible exclusions

interest for an "unreasonable" delay mentions "named insureds," and that subsection is not before us. Subsection (b), the subsection at issue here, applies to all claims made for benefits without any restriction on who makes the claim. Second, the only evidence required to support a request for a defense is tender of the complaint against the insured, which Maryland Casualty admits was tendered on April 14. Notably, Maryland Casualty never informed Marathon of any asserted failings in its tender at the time it was made.

[12]We reject out of hand Maryland Casualty's arguments that a bad faith cause of action should only protect individual insureds and not business entities such as Marathon. Maryland Casualty cites no case to support such a sweeping statement, and we note that the Wyoming Supreme Court allowed a bad faith claim by a bank against an insurer in *First Wyoming Bank, N.A., Jackson Hole v. Continental Insurance Co.*, 860 P.2d 1094 (Wyo. 1993).

that would apply; and employing an expert to testify at trial which would increase SSI's potential liability. The ninth claim alleged Maryland Casualty acted in bad faith toward both SSI and Marathon in its conduct during the settlement conference. Specifically, Marathon alleged that Maryland Casualty acted in bad faith toward SSI by appointing a conflicted attorney to defend SSI and refusing to consent to SSI's settlement of the third-party complaint, and that it acted in bad faith toward Marathon by failing to offer the $1 million limits on the SELI coverage during the settlement conference.

Maryland Casualty filed a motion to dismiss these claims. Converting Maryland Casualty's dismissal motion into a motion for summary judgment, the district court granted Maryland Casualty summary judgment on both claims. On the eighth claim, the district court concluded that because Maryland Casualty defended SSI without any reservation of rights, SSI could not make out a bad faith claim against Maryland Casualty. *See* App., Vol. 4 at 955-56. As to the assigned portion of the ninth claim, the district court concluded that SSI's bad faith cause of action would not accrue until the confessed judgment was actually entered against it for an amount in excess of the policy limits. *See id.* at 958. Finally, as to Marathon's own claim of bad faith, the district court agreed with Marathon's concession that it could not establish this particular claim absent the existence of SELI coverage under the policy, and the court had already found in

Maryland Casualty's favor on that issue. *See id.* at 958. Marathon appeals from these grants of summary judgment.

## A. *The Assigned Claims*

### 1. *Breach of Contract*

In its second amended complaint, Marathon asserted a new claim against Maryland Casualty on behalf of SSI. [13] Marathon asserted that "Maryland is contractually obligated to indemnify Steel Structures, Inc. . . . [and Maryland] breached its obligations to its insured, Steel Structures, Inc., and acted in bad faith." App., vol. 2 at 444. The district court asked Marathon to clarify its assigned claims. *See* App., vol. 4 at 952. Marathon filed a written clarification in response, stating that it was "assert[ing] a claim for breach of contract" as the assignee of SSI. *See id* . at 840. Specifically, Marathon cited Maryland Casualty's "failure to communicate" with Marathon, which resulted in Marathon's suit against SSI; Maryland Casualty's provision of an attorney to SSI who "had an obvious conflict of interest;" and Maryland Casualty's failure to

---

[13]We note that Platte's brief asserts arguments on this point different from those made below. We refuse to consider those arguments, however, in accordance with the general rule that this court will not consider an issue on appeal that was not raised in the district court. *In re Walker*, 959 F.2d 894, 896 (10th Cir. 1992). It should also be noted that all of the district court pleadings discussed in this section of the opinion were filed jointly by counsel for Marathon and Platte.

inform SSI that certain claims made against it by Platte were specifically excluded from its insurance policy with Maryland Casualty. *Id.*

Marathon based most of this breach of contract argument on the case of *Insurance Co. of North America v. Spangler*, 881 F.Supp. 539 (D. Wyo. 1995). *Spangler* involved a lawsuit brought by the widow of a man killed in a bar brawl after both the deceased and his assailant had been drinking. The widow filed a negligence suit against the bar owner, among others. The insurance company who provided general liability insurance to the bar owner notified the bar owner that it was defending him under a reservation of rights. Simultaneously, the insurance company filed a declaratory judgment action against the bar owner, claiming that because the bar owner's insurance policy specifically excluded claims resulting from the consumption of alcohol, the insurer had no duty to indemnify the owner. On the eve of trial of the negligence suit, the bar owner entered into a settlement with the widow wherein he assigned his rights against the insurance company to her in exchange for her agreement not to execute against him personally. *See id.* at 541. The insurance company refused to ratify the settlement or to indemnify the bar owner because, the company contended, the bar owner violated the duty of cooperation by settling with the widow. *See id.* at 542. The insurer then added the widow as a party to its declaratory judgment action, seeking a declaration that it did not have to pay her the

settlement amount. *See id.* The district court held that "where the insurer [1] was defending under a reservation of rights and [2] had filed a declaratory judgment action contesting coverage, the insured's assignee is not barred from recovery from the insurer for a stipulated liability to which the insurer did not consent and the insured is not personally liable." *Id.* at 544 (numbers added).

In its clarification below, Marathon argued that *Spangler* applies to the case at hand because while Maryland Casualty did not file a declaratory judgment action against SSI, it did defend SSI under a reservation of rights. App., vol. 4 at 845. Alternatively, Marathon argued that even if there were no reservation of rights, the rationale of *Spangler* should be extended to this case because SSI was placed in a "precarious position" by Maryland Casualty, thus satisfying the policy rationale behind *Spangler*. App., vol. 4 at 846-47.

The district court rejected Marathon's argument. It found that Maryland Casualty defended SSI wholeheartedly, *id.* at 955, and that its July 25, 1997, letter to SSI, wherein it notified SSI of the amount of the policy limit and that liability in the *Berg* litigation could exceed that limit, did not constitute a reservation of rights. *Id.* at 956. The district court declined to extend the "precarious position" rationale of *Spangler* beyond the facts of that case and reaffirmed that the case only applied where there was a reservation of rights and a declaratory judgment action. *Id.* The court granted summary judgment to

-41-

Maryland Casualty on the eighth claim.

We affirm the district court's ruling on this issue. It is plain to us that Maryland Casualty did not defend SSI under a reservation of rights; rather the letter sent by Maryland Casualty to SSI was merely a notification to the insured of the possibility of a judgment that would exceed policy limits. We are also persuaded that the holding of *Spangler* should not be extended beyond the very narrow facts of that case. To do otherwise would be to introduce an element of uncertainty and unpredictability into insurance law regarding the extent of the insured's duty of cooperation.

Alternatively, the district court noted that in addition to a contractual claim, Marathon appeared to be making a bad faith claim on SSI's behalf. Marathon contended that Maryland Casualty acted in "procedural" bad faith with regard to its defense of SSI. [14] Although Marathon styled its claim as one of bad faith, Marathon referred to it as a "breach of contract" claim in its clarification to the district court, thereby confusing the matter. Under Wyoming law bad faith is a tort, the violation of "the duty of good faith and fair dealing." *McCullough*, 789 P.2d at 855; *see also Herrig*, 844 P.2d at 490. Marathon cited no case law to the district court in support of its argument that Maryland Casualty engaged in

---

[14]See Section III, *supra*, for a detailed discussion of the two types of first-party bad faith under Wyoming law.

bad faith towards SSI. As a consequence, the district court construed Marathon's claim as one for third-party bad faith, i.e., Maryland Casualty's bad faith towards Marathon itself in the latter's settlement with SSI. Under Wyoming law, as the district court noted, a claim for third-party bad faith can only be brought where the insurer has failed to settle within policy limits. Here, there "was no evidence of a judgment against SSI in excess of policy limits." App., vol. 4 at 957. Although we do not believe Marathon was limited, as the district court implied, to asserting only a third-party bad faith claim, we conclude that Marathon failed to coherently argue its first-party claim to the district court. Remand on this bad faith issue, therefore, would be inappropriate. We hold the district court did not err in dismissing the eighth claim.

   *2. Bad faith settlement practices as to SSI*

   Marathon also complains that Maryland Casualty unreasonably failed to consent to Marathon's settlement offer to SSI. As the district court recognized, this is a third-party bad faith cause of action. *See Jarvis v. Farmers Ins. Exchange*, 948 P.2d 898, 900 (Wyo. 1997) (stating that third-party bad faith cause of action lies when insurer refuses in bad faith to settle a third-party claim against its insured within policy limits). The Wyoming Supreme Court has held that such a claim will not accrue until after a judgment has been entered against the insured in excess of the policy limits. *See id.* at 902. Because it is

-43-

undisputed that the judgment against SSI has not been enforced against it, we agree with the district court that Maryland Casualty was entitled to summary judgment on this claim, which constitutes part of the ninth claim in the complaint.

In sum, all of the assigned claims involving SSI were properly dismissed by the district court, including the entire eighth claim and a portion of the ninth claim.

## B.  *Bad faith refusal to offer SELI limits*

As to its first-party bad faith claim, Marathon asserts that Maryland Casualty acted in bad faith towards it when it failed to offer the $1 million dollar SELI coverage limits during the *Berg* settlement conference.  The district court held that this claim was dependent upon Marathon being covered and granted summary judgment to Maryland Casualty on that basis, *see* App., Vol. 4 at 958. However, we concluded above that Marathon has SELI coverage. [15]

The Wyoming Supreme Court has recognized that where an insurer fails to accept a reasonable settlement offer within policy limits, that conduct is the basis of a bad faith cause of action.  *See Western Cas. & Surety Co. v. Fowler*, 390

_____

[15] The parties have represented to us that Marathon's settlement with Mr. Berg exceeded the $1 million SELI provision limits.

P.2d 602, 604 (Wyo. 1964). *See also* Eric Mills Holmes & Mark S. Rhodes, *Appleman's on Insurance* 2d § 8.9 at 471 (2d ed. 1996) (citing cases that follow this rule). Since then, other courts have held an insurer's failure to offer the limits of the insurance policy during settlement may amount to bad faith when the claim against the insured has merit and the insured's potential liability exceeds the policy's limits, as was the case here. *See, e.g.*, *Courvoisier v. Harley Davidson of Trenton, Inc.*, 742 A.2d 542, 549, 550 (N.J. 1999) (insurer's offer of only a fifth of the policy limits where claim had merit and far exceeded the policy limits was remanded for trial on claims of bad faith); *Opperman v. Nationwide Mut. Fire Ins. Co.*, 515 So.2d 263, 267 (Fla. Dist. Ct. App. 1987) (insurer's repeated refusal to offer full limits of policy in face of convincing evidence that value of plaintiff's case far exceeded those limits constituted sufficient allegations of bad faith to survive summary judgment); *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 306 A.2d 77, 78-79 (N.J. Super. Ct. App. Div. 1973) (insurer's failure to offer policy limits constituted bad faith notwithstanding there was no assurance from plaintiff that action could be settled within policy limits). In *Ahrenholtz*, 968 P.2d at 951, the Wyoming Supreme Court held that where the record shows any conduct which has been held to constitute bad faith, the claim must go to the jury. Indeed, in *Jarvis*, 958 P.2d at 902, the Wyoming Supreme Court recognized just this type of claim, although it held the claim would not

accrue until a judgment in excess of the policy limits was entered against the insured.

Important here is the fact that the magistrate judge ordered Maryland Casualty to be at the settlement conference with full authority to offer the limits of the policy. Maryland Casualty claims this order did not include the SELI limits. Whether this belief was in good faith is a question of fact for the jury.

Consequently, we reverse the district court's grant of summary judgment regarding whether Maryland Casualty's failure to offer the limits of the SELI coverage during settlement amounted to bad faith as to Marathon.

V

DISCOVERY ISSUES

As set forth above, Maryland Casualty appointed the law firm of Murane & Bostwick on May 29, 1997, to defend SSI against Marathon's third-party complaint. On that same day, according to the deposition testimony of Maryland Casualty employees and an attorney at Murane & Bostwick, Maryland Casualty hired Murane & Bostwick to prepare a coverage opinion regarding whether Marathon and Platte were covered under SSI's policy as additional insureds, apparently finally acting on Marathon's initial tender from April 14.

Maryland Casualty received that coverage opinion on July 8, 1997, but it

-46-

did not act upon it. A week later, on July 15, a month before the settlement conference in the *Berg* litigation and in the face of Maryland Casualty's unresponsiveness, Marathon filed this action. On July 25, Maryland Casualty retained litigation counsel from the Wyoming-based firm of Lathrop & Rutledge and the San Francisco-based firm of Wright, Robinson, Osthimer & Tatum to defend against Marathon's claims. At some point Ms. Griffith, Maryland Casualty's claims adjuster, asked James Nielsen, an attorney at the latter firm, to write Marathon's counsel and offer a defense to Marathon in the *Berg* litigation under a reservation of rights. He did so on August 15.

Maryland Casualty explains its failure to respond to Marathon's repeated tenders until August 15 with the assertion that it had been waiting for Murane & Bostwick's coverage opinion, and that Marathon filed this action before it had a chance to act upon that opinion. During discovery, Marathon sought production of the entire claims file for its claim, the coverage opinion from Murane & Bostwick, and any documents showing when Maryland Casualty requested a coverage opinion from Murane & Bostwick and when the policy and endorsements were provided to Mr. O'Neill to aid in that effort. Maryland Casualty resisted production of these documents, asserting attorney-client privilege.

Marathon filed a motion to compel. The magistrate judge ordered the

-47-

production of several documents which he held were not privileged. In addition, he ordered production of all the documents he found were privileged, ruling that Maryland Casualty could not assert its privilege for several reasons. *See* App., Vol. 3 at 548. Among those reasons was the magistrate judge's conclusion that Maryland Casualty created a conflict of interest for Murane & Bostwick by hiring the firm to represent SSI against Marathon's third-party complaint while simultaneously representing Maryland Casualty for purposes of the coverage opinion. Citing no case law, the magistrate judge ruled that Maryland Casualty's claim to privilege would be inequitable under these circumstances. Continuing this reasoning and citing *Shapiro v. Allstate Ins. Co.*, 44 F.R.D. 429 (E.D. Penn. 1968), the magistrate judge held that SSI's assignment of claims to Marathon permitted Marathon to "learn all the information to which SSI was entitled." *Id.* at 549. He also said that because Maryland Casualty was relying on the advice of counsel as a defense to Marathon's claims of bad faith, it had waived its attorney-client privilege. The Magistrate Judge accordingly ordered Maryland Casualty to produce the documents.

Maryland Casualty appealed to the district court. The district court first concluded that any conflict which Murane & Bostwick might have had did not waive Maryland Casualty's attorney-client privilege. *See* App., Vol. 3 at 694, 702. The court then addressed Maryland Casualty's alleged reliance on the

advice of counsel. Although the court cautioned that Maryland Casualty "may have, under the tests discussed in *Frontier Refining,* [*Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d at 695, 699 (10th Cir. 1998),*] have [sic] waived its privilege," it would nonetheless accept Maryland Casualty's assertion that it was not relying on advice of counsel as a defense to the bad faith claims. *Id*. at 704. As a consequence, the district court ruled it would not allow Maryland Casualty to offer any advice-of-counsel defense at trial, or present any evidence relating to such a defense. *See id.* The court ordered Maryland Casualty to produce the documents for its *in camera* review to determine whether they showed when Maryland Casualty asked for and received legal advice relating to Marathon's claims of coverage. *See id.* at 705. After an *in camera* review, the district court held that Maryland Casualty had claimed a valid attorney-client privilege and was therefore not required to produce the materials. *See* App., Vol. 4 at 855. In denying Marathon's motion to reconsider, the district court pointed to its original ruling that Maryland Casualty was not relying on the advice of counsel and that it would not be allowed to use a privilege defense at trial. *See id.* at 911.

Marilyn Griffith, the adjuster who handled Marathon's claims for Maryland Casualty, ended her employment with Maryland Casualty during this litigation. On July 31, 1998, after the district court's rulings on the coverage issues but before its rulings on the bad faith claims, the magistrate judge ordered the

production of Marilyn Griffith's personnel file. Maryland Casualty appealed this ruling to the district court. Not reaching the appeal until after its grant of summary judgment to Maryland Casualty on the bad faith claims, the court dismissed the appeal as moot.

Marathon appeals these various orders. [16] We will not reverse a trial court's order denying discovery absent an abuse of discretion. *See Frontier Refining,* 136 F.3d at 699. "In this context, however, we review the court's underlying factual determinations for clear error and review de novo purely legal questions." *Id.*

## A. Claims File Documents and Coverage Opinion

On appeal, Marathon encourages us to adopt the magistrate judge's reasoning and hold that Murane & Bostwick's conflict of interest waived Maryland Casualty's attorney-client privilege, or, alternatively, that Maryland Casualty's reliance on advice of counsel as a defense to the bad faith claims waives the privilege. We decline to adopt either conclusion.

### 1. Conflict as a waiver

Believing that Maryland Casualty created a conflict by hiring Murane &

---

[16]Marathon also asserts it is entitled to documents protected by SSI's attorney-client privilege to support its claim that Maryland Casualty's hiring of a conflicted attorney to defend SSI amounted to bad faith. Due to our disposition of this claim, we need not address this assertion.

Bostwick to undertake both representations, the magistrate judge determined that "[u]nder these circumstances, it would be inappropriate to allow Maryland Casualty to raise the attorney-client privilege and protect documents from discovery concerning the Marathon/Platte coverage issue." App., Vol. 3 at 549. To the extent the conflict argument relates to the assigned claims of SSI, the issue has become moot given our affirmance of the district court's dismissal of these claims. To the extent the conflict issue may impact any of Marathon's claims upon which we have reversed the district court, we remand any discovery issues to the district court for further consideration.

## 2. *Reliance upon advice of counsel*

The district court accepted Maryland Casualty's assertion [17] that it was not relying on the advice of counsel, but Marathon strenuously disagrees. After

---

[17]We do note that the district court's acceptance of Maryland Casualty's assertion is not without precedential support. *See, e.g.*, *Oil, Chem. & Atomic Workers Int'l Union v. Sinclair Oil Corp.*, 748 P.2d 283, 290 (Wyo. 1987) (holding defendant's discovery response that its attorney participated in decision to disseminate letter allegedly containing defamatory material did not amount to reliance on the advice of counsel such that the attorney-client privilege was waived); *see also Frontier Refining*, 136 F.3d at 700 (discussing *Sinclair*). Moreover, it is worth pointing out that dates as to when an insurer seeks a coverage opinion are subject to discovery, but a court should not compel production of privileged documents as a means of verifying those dates. *See, e.g.*, *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 415-16 (D. Del. 1992) (noting that privileged documents should not be compelled solely as a means of checking when a party sought coverage from insurer) (cited in *Frontier Refining*, 136 F.3d at 702).

reviewing the record and Maryland Casualty's position throughout the litigation below and continuing here on appeal, we find this to be a close question because of Maryland Casualty's continued assertion that it was waiting for advice from counsel before acting.

Nevertheless, we have confidence that the district court will faithfully enforce its order that Maryland Casualty may not enter anything into evidence at trial concerning matters about which it claimed a privilege. After our own *in camera* review of these documents, we are convinced that the dates Maryland Casualty has admitted to concerning when it requested and received the coverage opinion are supported by the privileged documents. We therefore find no abuse of discretion in the district court's order.

## B. Marilyn Griffith's Personnel File

In its reply brief, Marathon urges us to rule on this issue because, although it became moot in the district court, it is squarely before this court. Because we are remanding in any event, we remand this issue as well for consideration by the district court in the first instance.

In summary, we affirm in part and remand in part the district court's

discovery orders for further consideration. [18]

# VI

# COSTS

The district court, in its final order, granted Maryland Casualty's motion for deposition costs amounting to $1,114.75, without responding to Marathon's strenuous objection. Marathon appeals this grant of costs, asserting that the district court violated its local rule and therefore abused its discretion. As the district court's power to grant costs is discretionary, we accordingly review its grant for an abuse of that discretion. *See Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995).

"Although a federal statute provides that a judge may tax deposition expenses as costs if the depositions are 'necessarily obtained for use in the case,' 28 U.S.C. § 1920, a more stringent local district court rule allows costs only for

---

[18]On appeal, Marathon attempts to make arguments that certain of the documents sought in its motion to compel are not privileged materials, but are in fact business records that are discoverable. While the magistrate judge apparently agreed and found they were not privileged and thus must be produced, *see* App., Vol. 3 at 548, we cannot discern from the record whether Maryland Casualty ever produced those documents or whether they were included in its appeal to the district court. Furthermore, it does not appear that the documents the magistrate judge found not privileged were ever separately addressed by the district court. We therefore leave this issue to the district court for further action on remand upon appropriate motions made by the parties.

depositions received in evidence." *Hernandez v. George*, 793 F.2d 264, 268-69 (10th Cir. 1986). Local Rule 54.2(f) addresses when the district court here will allow costs, and subsection (2)(D) sets forth the following:

> Costs of depositions are taxable if the depositions or portions thereof were read into evidence at trial in lieu of the appearance of the deponent; or if the deposition is used at trial to impeach a witness on the witness stand with his/her prior testimony; or it is necessary during the course of trial that a witness's recollection be refreshed from his/her deposition testimony.

D. Wyo. L.R. 54.2(f)(2)(D). From this rule it is clear that the district court is only empowered under its own rules to grant costs in three separate situations, all of which involve using evidence from the deposition at trial. This case was decided prior to trial. The record does not reflect that the court was intentionally overlooking its local rule and exercising its more general statutory authority as Maryland Casualty suggests. In any event, since we are reversing the grant of summary judgment in favor of Maryland Casualty, the district court will need to redetermine costs when these proceedings become final. Consequently, we reverse the grant of deposition costs to Maryland Casualty.


# VII

## CONCLUSION

In sum, we **REVERSE** the district court's grant of summary judgment to Maryland Casualty on the coverage issues, holding instead that Marathon

qualified as an additional insured and was covered under the SELI provisions of the policy for its liability to Mr. Berg. We also hold that Maryland Casualty had a duty to defend Marathon during the *Berg* litigation. In addition, we **REVERSE** the district court's grant of summary judgment to Maryland Casualty on Marathon's fourth and fifth claims asserting bad faith delay by Maryland Casualty, and **REMAND** this issue for trial. We **AFFIRM** the district court's grant of summary judgment on the claims SSI assigned to Marathon. We **REMAND** for further consideration the discovery challenges surrounding Ms. Griffith's personnel file. We also **REVERSE** the district court's grant of costs to Maryland Casualty.

The case is **REMANDED** to the district court for further proceedings in accordance with this opinion.