**Michael GARCIA, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation, Defendant.**

Case No. 11–CV–84–S.

United States District Court, D. Wyoming.

Aug. 29, 2011.

1265

Richard H. Honaker, Honaker Law Offices, Rock Springs, WY, for Plaintiff.

Monty L. Barnett, Peter J. Young, White & Steele, Denver, CO, for Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT**

SCOTT W. SKAVDAHL, United States Magistrate Judge.

This matter comes before the Court on cross-motions for summary judgment. The Court, having reviewed the motions and the parties' written submissions, having heard oral argument, and considering

itself otherwise fully advised in the premises of the motions, hereby FINDS and ORDERS as follows:

### *FACTUAL BACKGROUND*

This lawsuit involves a claim for uninsured motorist ("UM") benefits by Plaintiff Michael "Mickey" Garcia under a policy of insurance he purchased from Defendant Nationwide Mutual Insurance Company ("Nationwide"). The facts pertinent to the pending cross-motions are undisputed, and the Court's factual recitation is drawn primarily from the parties' agreed-upon undisputed facts.

On February 24, 2009, Garcia was injured in a motor vehicle collision with an uninsured motorist in Sweetwater County, Wyoming. Garcia sustained bodily injuries as a result of the collision that required medical treatment and rendered him unable to work for a period of time. Because Garcia was acting within the scope of his employment as a driver for A & C Driving Service LLC at the time of the collision, and because his employer had provided worker's compensation coverage for him, Garcia was eligible for the payment of worker's compensation benefits. The Wyoming Workers Compensation Division paid $5,434.28 in temporary total disability payments to Garcia and $34,264.73 in medical payments to Garcia or on his behalf. Although Garcia incurred a total of $69,447.08 in medical expenses as a result of the collision, all of Garcia's medical expenses were satisfied by the worker's compensation medical payments totaling $34,264.73.

At the time of the collision, Garcia was insured by Nationwide under a Nationwide automobile liability policy, policy number AACM0016904099–2. Garcia's policy included an uninsured motorist endorsement that provided uninsured motorist coverage with a per person limit of $250,000. Nationwide charged and collected a premium

for that coverage from Garcia. Exclusion "B" of Garcia's uninsured motorist endorsement excludes coverage that would benefit any insurer under a workers' compensation law; however, that exclusion "does not apply to the Workers Compensation Division of the Wyoming State Treasurer's Office." (UM Endorsement at 2.) As a matter of policy, however, the State of Wyoming does not assert subrogation liens against payments made to injured workers under insurance policies that they have personally purchased. Accordingly, no worker's compensation lien is asserted against any recovery Garcia may receive from his uninsured motorist coverage in this case.

Nationwide's contractual obligation to provide UM benefits to Garcia is set forth in the three-page UM endorsement. The UM Endorsement of Garcia's policy provides:

A. We [Nationwide] will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

(*Id.* at 1.) The "Limit of Liability" Section of the uninsured motorist endorsement contains two additional provisions that the parties assert are relevant to the issues now before the Court. The first provides:

We [Nationwide] will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

(*Id.* at 2.) The second provision states:

No "insured" shall be entitled to recover payment in excess of damages sustained.

(*Id.*)

In addition to these policy provisions, there are state regulations which are ap-

plicable to the issues before the Court. The Wyoming Insurance Department has promulgated a "Regulation Governing Uninsured Motorist Endorsements" which applies to all uninsured motorist policies issued in the State of Wyoming. *See* Regulations, Wyoming Dept. of Insurance, ch. 23 §§ 1–10. Two sections of that regulation are pertinent to the Court's discussion of these issues. Section 5 of the regulation provides as follows:

Section 5. **Reduction of Uninsured Motorist Coverage by Sums Paid Under Automobile Medical Coverage, Bodily Injury Coverage, and Workmen's Compensation**

(a) In no instance shall the benefits payable under insured motorists coverage be reduced on account of payments made under any other section of the policy, including but not limited to, sums paid under automobile medical coverage and bodily injury liability coverage, where actual damages exceed the policy limits of the uninsured motorists coverage. Only when total proven or undisputed damages incurred by the insured do not exceed the policy limits of the uninsured motorist coverage may payments made under other provisions of the policy be used to reduce uninsured motorist benefits.

(b) *In no instance shall the benefits payable under uninsured motorists coverage be reduced by amounts paid under Worker's Compensation legislation.*

*Id.* at § 5 (emphasis added). Section 10 of the regulation provides:

Section 10. **Benefits in Excess of Actual Damages Not to be Inferred**

Notwithstanding any other section of this regulation, no payments will be required under uninsured motorists coverage which would result in duplicate payment for the same elements of loss or payment in excess of damages sustained. *Id.* at § 10. It is behind the backdrop of these regulatory provisions and the contractual language that the issues are presented.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a). Where, as here, the parties file cross-motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997), *cert. denied*, 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998).

As a federal court sitting in diversity, this Court applies the substantive law of the forum state. Because the policy was issued in Wyoming, both parties agree Wyoming law governs this dispute.

### DISCUSSION

I. *Wyoming Insurance Regulations Governing the Issuance of Uninsured Motorist Insurance Prohibit any Set–Off for Worker's Compensation Benefits*

The sole issue before the Court is whether Nationwide is entitled to offset $39,699.01 in worker's compensation payments paid to or on behalf of Garcia from the amount of uninsured motorist benefits Nationwide owes Garcia under his UM policy. Nationwide asserts that the policy coverage at issue insures only against actual loss and does not encompass duplicate

payments. Because the Wyoming Workers Compensation Division has already paid Garcia for this portion of his damages and does not intend to assert a subrogation lien against his recovery in this case, Nationwide asserts that paying Garcia's damages, without regard to the worker's compensation benefits he received, would result in Garcia receiving a double recovery in contravention of the terms of his policy. Garcia asserts that he is entitled to recover the full amount of his medical bills and lost earnings without any set-off for worker's compensation benefits he received. Garcia further asserts that the worker's compensation payments he received were from a "collateral source" and pursuant to the "collateral source rule," Nationwide is not entitled to a reduction of the damages owed under Garcia's UM policy.[1]

 "[P]arties have the right to embody in their [insurance] contract whatever lawful terms they wish, on the condition that the insurance agreement does not conflict with pertinent statutes or public policy." *See Aaron v. State Farm Mut. Auto. Ins. Co.*, 34 P.3d 929, 932 (internal citations omitted). "It will not be supposed that the parties entered into a contract contemplating an act amounting to a violation of the law and [the contract] will be construed as intending something for which they had the power to contract." *Tri–County Elec. Ass'n, Inc. v. City of Gillette*, 584 P.2d 995, 1006 (Wyo.1978). "[I]f a contract can be performed legally, it will be presumed by the court that the parties intended a lawful mode of performance." *Id.* at 1005.

 The Wyoming Insurance Department has promulgated the "Regulation Governing Uninsured Motorist Endorsements" which governs the terms of all uninsured motorist policies issued in the State of Wyoming. *See* Regulations, Wyoming Dept. of Insurance, ch. 23 §§ 1–10. In interpreting this regulation, the Court notes that "[t]he rules of statutory interpretation also apply to the interpretation of administrative rules and regulations." *Powder River Basin Resource Council v.*

---

1. The collateral source rule holds that "if an injured person receives compensation for his injuries from a source wholly independent of the tort-feasor, the payment should not be deducted from the damages which he would otherwise collect from the tortfeasor." *Miller v. Campbell County*, 901 P.2d 1107, 1112 (Wyo.1995) (quoting BLACK'S LAW DICTIONARY 262 (6th ed. 1990)). This rule is invoked "to inhibit a tortfeasor from receiving credit in an instance in which a plaintiff has received payments from his insurer or other sources for medical treatment or other losses, which ultimately are established to be the responsibility of the tortfeasor." *Id.* Because, as set forth below, the Court concludes both that any construction of the policy allowing for a set-off of worker's compensation benefits would violate Wyoming's insurance regulations and is therefore invalid and unenforceable as a matter of law, and further, that any ambiguity in the policy language must be construed in favor of the insured, the Court need not address the question of whether the collateral source rule operates as a separate bar to the set-off sought by Nationwide. Nonetheless, although the Court is not convinced that the collateral source rule, which finds its genesis in tort law, would be applicable in the context of a first-party claim by an insured under his own uninsured motorist policy, *see Miller*, 901 P.2d at 1114 (holding that collateral source rule is inapplicable in inverse condemnation actions and noting that the collateral source rule contemplates application to tortfeasors); *see also, Hurd v. Nelson*, 714 P.2d 767, 770 (Wyo.1986) (noting that collateral source doctrine is generally not applied to breach-of-contract actions "because the collateral source rule is punitive, while contractual damages are compensatory in nature"), this case is distinguishable from *Miller* in that Mr. Garcia has paid premiums entitling him to uninsured motorist coverage, whereas the plaintiffs in *Miller* paid nothing for the forgiveness of mortgage indebtedness or equity payments at issue in that case. *Id.* at 1110.

*Wyoming Dept. of Environmental Quality,* 226 P.3d 809, 819 (Wyo.2010) (quoting *Powder River Coal Co. v. Wyoming State Bd. of Equalization,* 38 P.3d 423, 426 (Wyo.2002)). "[A]ll portions of an act [or regulation] must be read in pari materia, and every word, clause and sentence of it must be considered so that no part will be inoperative or superfluous." *Id.* (quoting *KP v. State,* 102 P.3d 217, 224 (Wyo.2004)); *see also State Bd. of Equalization v. Cheyenne Newspapers, Inc.,* 611 P.2d 805, 809 (Wyo.1980) ("We must give meaning to every word, clause and sentence of the statute and the statute should be construed so that no part will be inoperative or superfluous."). Additionally, when two statutes [or regulations] directly conflict, the more specific governs over the more general. *State Farm Mut. Auto. Ins. Co. v. Kunz,* 186 P.3d 378, 382 (Wyo.2008).

Section 5(b) of the Regulation Governing Uninsured Motorist Endorsements provides:

> In no instance shall the benefits payable under uninsured motorists coverage be reduced by amounts paid under Worker's Compensation legislation.

Regulations, Wyoming Dept. of Insurance, ch. 23 § 5(b).[2] This regulation prohibits Nationwide and other uninsured motorist insurers from specifically including a provision in the UM Endorsement requiring a reduction in uninsured motorist benefits as a result of an award of worker's compensation benefits. In other words, Section 5(b)

explicitly prevents the contractual interpretation relied upon by Nationwide in its motion for partial summary judgment. That the parties (and more specifically, Nationwide, as the drafter of the insurance policy) recognized the limitation set forth in Section 5(b) is evidenced by Exclusion "B" contained within the UM Endorsement. Exclusion B generally provides that the UM coverage provided for by the UM Endorsement "shall not apply directly or indirectly to benefit any insurer or self-insurer;" however, it goes on to state that the exclusion "does not apply to the Wyoming Workers Compensation Division of the Wyoming State Treasurer's Office." (UM Endorsement at 2.) This limitation appears to be a direct acknowledgment of the requirements of Section 5(b).

██ In contrast to Section 5(b), and contained within the same "Regulation Governing Uninsured Motorist Endorsements" stands Section 10, a general "catch-all" provision that provides as follows:

> Section 10. **Benefits in Excess of Actual Damages Not to be Inferred**
>
> Notwithstanding any other section of this regulation, no payments will be required under uninsured motorists coverage which would result in duplicate payment for the same elements of loss or payment in excess of damages sustained.

*Id.* at § 10. Nationwide reads Section 10 to "trump" the more specific language of Section 5(b), relying on the magic words

---

**2.** The terms of Section 5(a) are not relevant to the dispute now before the Court. Generally, Section 5(a) addresses allowable reductions of uninsured motorists coverage by sums paid under automobile medical coverage and bodily injury liability coverage. Where actual damages are greater than the uninsured motorist policy limits, Section 5(a) provides that the policy may not require a set-off for payments made under any other sections of the policy (e.g., those sections allowing automobile medical coverage and bodily injury liabil-

ity coverage); however, where actual damages are less than or equal to the uninsured motorist policy limits, Section 5(a) provides that such a set-off is permissible. Regulations, Wyoming Dept. of Insurance, ch. 23 § 5(a). In contrast, Section 5(b) provides that *"[i]n no such instance,* shall the benefits payable under uninsured motorists coverage be reduced by amounts paid under Workmen's Compensation legislation." *Id.* at § 5(b) (emphasis added).

"notwithstanding any other section of this regulation." However, such an interpretation would render Section 5(b) completely meaningless. Essentially, Nationwide argues, what Section 5(b) giveth (protection of uninsured motorist benefits against from a set-off based on worker's compensation benefits received), Section 10 taketh away (by allowing such a set-off where requiring payment of such damages would "result in duplicate payment for the same elements of loss or payment in excess of damages sustained"). Utilizing this interpretation of Section 10, the Court cannot discern (nor did Nationwide proffer) any scenario involving worker's compensation benefits in which both Section 10 and Section 5(b) can be read to have meaning. Instead, the only result allowed by Nationwide's reading of Section 10 renders Section 5(b) completely hollow. This Court cannot read the regulation in a way that would render Section 5(b) completely inoperative. *See Powder River Basin Resource Council,* 226 P.3d at 819. Further, to the extent these two provisions of the regulation are in conflict, the Court reads the more specific regulation (Section 5(b)) to govern over the more general (Section 10). *See Kunz,* 186 P.3d at 382.

Section 5(b) prohibits Nationwide, in all instances, from requiring a reduction in uninsured motorist benefits payable under the policy as a result of worker's compensation benefits. Because the Court declines to read Section 10 of the uninsured motorist insurance regulations to render Section (5)(b) meaningless, the Court also declines to read Section 10 to allow Nationwide to accomplish through general exclusionary language that which it is prohibited from doing through an explicit set-off. Accordingly, even if the UM Endorsement allowed a set-off for the worker's compensation benefits at issue, such a set-off would violate Wyoming public policy as evidenced by Section 5(b) of the Regulation Governing Uninsured Motorist En- dorsements, and would therefore be invalid and unenforceable as a matter of Wyoming law.

II. *The UM Endorsement Can Be Construed In a Way that Does Not Require a Set–Off for Workers Compensation Benefits*

Because the Court will not suppose the parties entered into a insurance contract that violates Wyoming's insurance regulations, the Court must next consider whether the contractual provisions at issue can be construed as intending something for which the parties had the legal power to contract. *Tri–County Elec. Ass'n, Inc. v. City of Gillette,* 584 P.2d at 1006. Accordingly, the Court, having rejected Nationwide's interpretation of the UM Endorsement as being contrary to law, next construes the terms of the UM Endorsement to determine whether the contract can be given a lawful construction.

 "Under Wyoming law, interpretation of an insurance contract is a question for the court to resolve as a matter of law." *Marathon Ashland Pipe Line LLC v. Maryland Cas. Co.,* 243 F.3d 1232 (10th Cir.2001) (quoting *State ex rel. Farmers Ins. Exch. v. District Court of the Ninth Judicial Dist.,* 844 P.2d 1099, 1102 (Wyo. 1993)) (internal quotation marks omitted). When interpreting an insurance policy under Wyoming law, the Wyoming Supreme Court has set forth several key principles for courts to follow. *State ex rel. Farmers Ins. Exch.,* 844 P.2d at 1101–02 (quoting *Commercial Union Ins. Co. v. Stamper,* 732 P.2d 534, 539 (Wyo.1987)). First, the words of the contract are to be given their "common and ordinary meaning," and must not be tortured to create an ambiguity. *Id.* at 1101. Second, the primary consideration in interpreting an insurance policy is the parties' intention, which should be ascertained, to the extent possible, from

the language of the policy itself. *Id.* Third, insurance policies "should not be so strictly construed as to thwart the general object of the insurance." *Id.* Absent ambiguity, the policy is not subject to construction and must be enforced according to its terms. *Id.* at 1102. Finally, where the terms of a policy are ambiguous, the contract should be "construed liberally in favor of the insured and strictly against the insurer." *Id.* "[I]f the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted." *Id.* In addition, "if a contract can be performed legally, it will be presumed by the court that the parties intended a lawful mode of performance." *Tri–County Electric Assoc.,* 584 P.2d at 1005.

Garcia's uninsured motorist endorsement requires Defendant to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury'...." (UM Endorsement at 1.) The parties agree that Garcia is an "insured," that he sustained "bodily injury" in the collision, that the other vehicle involved in the collision was an "uninsured motor vehicle," and that he is "legally entitled to recover [damages] from the owner or operator of the uninsured motor vehicle." The critical provisions for purposes of the issue now before the Court are the following:

> We [Nationwide] will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.
>
> No "insured" shall be entitled to recover payment in excess of damages sustained.

(*Id.* at 2.) Both parties argue that this policy language is clear and unambiguous; however, not surprisingly, each has reached a different conclusion as to what

the policy clearly and unambiguously provides.

 "The language of an insurance policy is ambiguous if it is capable of more than one reasonable interpretation." *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d 1018, 1024 (Wyo.1993). Ambiguity in a contract is not created by the subsequent disagreement between the parties regarding the meaning of a contract. *Colorado Cas. Ins. Co. v. Sammons,* 157 P.3d 460, 465 (Wyo.2007). Instead, "[a] contract is ambiguous if indefiniteness of expression or double meaning obscure the parties' intent." *Id.* (quoting *Cathcart v. State Farm Mut. Auto. Ins. Co.,* 2005 WY 154, ¶ 18, 123 P.3d 579, 587 (Wyo.2005)). "If the meaning of a provision in a contract is not readily apparent, the court may resort to competent evidence of extraneous circumstances to determine the parties' intent." *Id.* Whether there is ambiguity within the four corners of the contract is a question of law. *Martin v. Farmers Ins. Exchange,* 894 P.2d 618, 620 (Wyo.1995).

## A. Duplication of Payments Made by Persons or Entities Who May Be "Legally Responsible"

With respect to the first provision, which states that Nationwide will not duplicate payments "for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible," Nationwide contends that the worker's compensation payments were payments "made by or on behalf of persons or organizations who may be legally responsible" within the meaning of the policy. Nationwide further contends that the payment of benefits for medical bills and lost wages already covered by worker's compensation would constitute a "duplicate payment" to Garcia in contravention of this provision. In contrast, Garcia contends that the phrase

"who may be legally responsible" applies to persons or organizations legally responsible *for causing Plaintiff's injuries and damages.* Those persons or organizations could include the uninsured motorist tortfeasor, any insuror (other than an automobile liability insurer) providing coverage for that tortfeasor's negligence, or any third party tortfeasor to whom any apportionment of fault for Plaintiff's injuries could be allocated under the comparative fault statute, Wyo. Stat. § 1-1-109.

The meaning of the phrase "who may be legally responsible" is not immediately apparent to the Court. On the one hand, Nationwide's reading has some logical appeal. The Wyoming Workers Compensation Division was "legally responsible" pursuant to a contract with Garcia's employer, to provide benefits to an employee such as Garcia injured in the course of his employment. Certainly, the Wyoming Workers Compensation Division did not assume the obligations to pay Garcia's medical and lost wage claims gratuitously.[3] On the other hand, throughout the UM endorsement, the question of legal responsibility relates specifically to an uninsured motorist's tort liability. *See, e.g.,* UM Endorsement at 1 ("We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury'..."). Similarly, the phrase "legally responsible" is used in the Wyoming uninsured motorist statute's subrogation provision in a way that denotes a more limited scope of "legal responsibility." Wyo. Stat. § 31-10-104 provides in relevant part as follows:

> In the event of payment to an insured under [uninsured motorist coverage] ..., the insurer making the payments is entitled to the proceeds of any settle-

ment or judgment resulting from the exercise of any rights of recovery of the insured against *any person or organization legally responsible for the bodily injury or death for which the payment is made,* ...

Wyo. Stat. § 31-10-104 (emphasis added). The additional modifying language "for the bodily injury or death" makes clear that the type of legal responsibility provided for in the statute refers to legal responsibility for *injuries* arising from tort liability, as opposed to legal responsibility for *damages* resulting from contractual obligation. In the absence of similar modifying language, the UM Endorsement's use of the phrase "legally responsible" has no clear and unambiguous meaning. Does the policy intend to prohibit duplication of payments made by entities legally responsible *for the insured's injuries (i.e.,* the tortfeasor, an insurer, or a third-party with comparative fault), or to payments made by entities legally responsible *for the damages* sustained by insured (i.e., as here, a worker's compensation insurer who is contractually liable for payment of a covered employee's damages)? The Court finds the indefiniteness and double meaning of the phrase "persons or entities legally responsible" obscures the parties' intent, and the provision is therefore ambiguous. Because this Court must construe the policy in harmony with the applicable insurance regulations as well as in favor of the insured, the Court finds that this provision does not require a set-off for benefits Garcia received from the Wyoming Worker's Compensation Division.

## B. Payments in Excess of Damages Sustained

The second relevant provision contained in the UM Endorsement provides that an

---

3. However, its apparent decision to forego recoupment of the amount of any payments made by Nationwide to Garcia is gratuitous.

insured shall not be entitled to recover "payment in excess of damages sustained." Nationwide contends that in light of the fact that the Wyoming Workers Compensation Division has disavowed any intent to seek reimbursement from benefits payable to Garcia, the inclusion of medical and lost wage claims already reimbursed by Workers Compensation in the benefits recoverable in this action would allow Garcia "to recover payment in excess of damages sustained." Aside from violating the public policy of Wyoming as evidenced by Section 5(b) of the Regulation Governing Uninsured Motorist Endorsements, the Court finds that this provision is ambiguous, and does not have the "clear meaning" Nationwide ascribes to it.

The provision, on its face, indicates that Garcia is not entitled to damages in excess of damages sustained. Garcia's medical bills and lost wage claims are damages that were sustained as a result of his collision with an underinsured motorist. In seeking to recover them in this action, Garcia is not seeking compensation from Nationwide in excess of damages sustained, but rather, he is seeking compensation reflecting the full amount of damages he sustained, without regard to whether payment was made for the same or some component of those damages by a collateral source.

Notably, there would be no "double recovery" in this case but for the decision by the Wyoming Workers Compensation Division not to assert its right of subrogation. Nationwide seems to concede, as it must under the policy language, that it would be obligated to reimburse the Wyoming Workers Compensation Division for the amounts it paid in worker's compensation benefits to Mr. Garcia. Accordingly, to the extent there is any "windfall" in this case, it is a windfall resulting entirely from the voluntary decision of the Wyoming Workers Compensation Division choosing to forego its valid subrogation claim. Further, as Plaintiff's counsel suggested at oral argument, in focusing on whether the Wyoming Workers Compensation Division may (or may not, as is apparently the case in this instance) assert its subrogation rights, the Court may be putting the cart in front of the horse. Any subrogation lien that could potentially be asserted against Mr. Garcia's recovery necessarily would not arise until Mr. Garcia has, in fact, recovered damages. Although the Court is mindful that an inflexible chronological focus ignores the practical realities of how these claims are litigated in the real world, the Court is not at all convinced it should concern itself with the amount of subrogation sought in each case, a result that goes hand-in-hand with the approach urged by Nationwide.

The Court finds that the UM Endorsement does not clearly and unambiguously require consideration of funds paid by a collateral source when calculating the "damages sustained" by Garcia. Instead, the policy may be read to limit Garcia's damages to those damages sustained, without regard to whether a collateral source for payment of some of those funds will assert a right of subrogation to recover separately from the insured.

### C. Construction in Keeping With Applicable Insurance Regulations and Favoring the Insured

Having determined that both of the relevant provisions are ambiguous, the Court applies the Wyoming rules regarding construction of an insurance contract. As set forth above, where the terms of an insurance policy are ambiguous, the contract must be construed liberally in favor of the insured and strictly against the insurer. *Aaron v. State Farm Mut. Auto. Ins. Co.,* 34 P.3d 929, 933 (Wyo.2001) (quoting *State ex rel. Farmers Ins. Exch.,* 844 P.2d at 1101 and *Stamper,* 732 P.2d at 539). Ad-

ditionally, where one interpretation would violate the law, the Court should give precedence to an interpretation that avoids voiding the contract as a matter of law. *Tri–County Electric Assoc.,* 584 P.2d at 1006. Here, the relevant provisions of the UM Endorsement are fairly susceptible of two constructions, one favoring the insured and one favoring Nationwide. As discussed above, the constructions favoring Nationwide run afoul of Section 5(b) of the Regulation Governing Uninsured Motorist Endorsements and its prohibition against reductions in benefits for worker's compensation payments. The Court presumes Nationwide intended a lawful mode of performance of the UM Endorsement. Accordingly, the Court adopts the construction favorable to the insured and in keeping with the applicable insurance regulations, and concludes that neither of the provisions of the UM Endorsement discussed above preclude the recovery of medical bills and lost wages previously compensated by the Wyoming Workers Compensation Division.

### CONCLUSION

WHEREFORE, for the reasons set forth above, the Court finds that Nationwide's interpretation of the relevant UM Endorsement's provisions would be contrary to Section 5(b) of the Regulation Governing Uninsured Motorist Endorsements. In addition, to the extent the policy provisions can be read to allow two reasonable constructions, the Court strictly construes the policy against Nationwide and adopts the interpretation which does not violate applicable insurance regulations. Accordingly, the Court finds, as a matter of law, that Nationwide is not entitled to a set-off in the amount of $39,699.01 for the workers compensation's benefits received by or on behalf of Garcia. Plaintiff's motion for partial summary judgment is therefore **GRANTED**, and Defendant's cross-motion for partial summary judgment is **DENIED.**

**IT IS SO ORDERED.**