999 F.2d 480
 AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a
Pennsylvania corporation, Plaintiff-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of the
American Bank of Casper, Casper, Wyoming,
Defendant-Appellant.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a
Pennsylvania corporation, Plaintiff-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of the
American National Bank of Eastridge, Casper,
Wyoming, Defendant-Appellant.
 Nos. 92-8045, 92-8046.
 United States Court of Appeals,
Tenth Circuit.
 July 16, 1993.
 
 Peter C. Houtsma of Holland & Hart, Denver, CO (Richard G. Schneebeck also of Holland & Hart, Cheyenne, WY, and Ann S. Duross, Asst. General Counsel, Richard J. Osterman, Jr., Sr. Counsel, Edward J. O'Meara and Morris Silverstein, Counsel, F.D.I.C., Washington, DC, with him on the brief), for defendant-appellant.
 William M. Hart (Douglas J. Muirhead also of Meagher & Geer, Minneapolis, MN, and Lawrence G. Orr of Guy, Williams, White & Argeris, Cheyenne, WY, with him on the brief), for plaintiff-appellee.
 Before LOGAN, McWILLIAMS, and MOORE, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Defendant Federal Deposit Insurance Corporation (FDIC) appeals the entry of summary judgment in favor of plaintiff American Casualty Company of Reading, Pennsylvania (ACCO) on ACCO's suit seeking a declaratory judgment of non-liability under a directors' and officers' liability policy. The policy was issued to the American Bank of Casper (Casper) and the American National Bank of Eastridge (Eastridge), both now under the receivership of the FDIC. Because the two cases present identical issues, they have been consolidated for administrative convenience, though not merged into a single case, for purposes of this appeal.
 
 
 2
 * In January 1985, ACCO issued a Director's and Officer's Liability Insurance Policy to American Bank Corporation (ABC) and its subsidiaries, which included both Casper and Eastridge. The policy period ran from October 19, 1984, to October 19, 1985, at 12:01 a.m. By later endorsement (the execution date of which is disputed), the policy period was extended fifty-five days to December 13, 1985. The policy provided that if ACCO elected to cancel or not to renew the policy, it was to give ABC thirty days advance notice of such action. On October 23, 1985, ACCO sent ABC a notice specifying that coverage under the directors' and officers' liability policy would terminate thirty days from receipt of the notice at 12:00 noon standard time. Because ABC had moved its offices, the notice was not received until November 14. On December 13, ABC sent ACCO a notice of occurrences at Casper and Eastridge that could give rise to claims under the policy.
 
 
 3
 ACCO subsequently filed declaratory judgment actions seeking rulings that it is not liable for ABC's claims under the policy.[1] ACCO argued that ABC's notices of occurrences were not timely, because the policy period had expired at 12:01 a.m. on December 13, and therefore ABC's notices sent later that day were submitted too late. FDIC contended that ABC had thirty days from receipt of the nonrenewal notice within which to submit claims, giving them until December 14. At the outset of this litigation, neither party considered this to be a dispositive issue, because ABC had purchased a discovery period that extended to March 12, 1986, and even if the claims were made after the policy period, they were filed within the discovery period. However, in March 1992, this court decided American Casualty Co. v. FDIC, 958 F.2d 324 (10th Cir.1992) (Wilkinson), which interpreted an identical insurance policy issued by ACCO to require either notice of potential claims within the policy period or notice of actual claims within the discovery period before liability would attach. The parties agree that neither ABC nor FDIC presented actual claims before the expiration of the discovery period, so the question whether the December 13 notices of potential claims were submitted within the policy period has assumed paramount importance.
 
 
 4
 The district court ruled that the notices were untimely and granted ACCO's motions for summary judgment. It first rejected FDIC's argument that Wilkinson should not be applied because it involved Oklahoma law whereas the instant case is governed by Wyoming law. The court found no relevant differences between the two states' law on the subject, and held that Wilkinson was binding precedent. It found no ambiguity in the policy, and held that the letter received by ACCO on November 14 was merely a reminder of the impending expiration of the policy, and was thus extrinsic to the insurance contract. The court rejected FDIC's contentions that ACCO was required to show prejudice, that it had waived any objections to the arguably late notice, and that ACCO's failure to submit its policy to the Wyoming Insurance Commissioner rendered it without effect. The district court ruled that ACCO had constructively nonrenewed the policy by making substantial changes without notice in 1984, but that FDIC could not now take advantage of the nonrenewal. FDIC now appeals these rulings.
 
 II
 
 5
 We review the grant of summary judgment de novo, applying the same standard used by the district court, i.e., summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah Power & Light Co. v. Federal Ins. Co., 983 F.2d 1549, 1553 (10th Cir.1993). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quotation omitted). The parties agree that Wyoming law applies to this dispute, and we review the district court's interpretation of state law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231-32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 
 6
 Under Wyoming law, "[a]n insurance policy is a contract, and the general rules of contract construction apply to insurance agreements. The interpretation of a written contract is done by the court as a matter of law." St. Paul Fire & Marine Ins. Co. v. Albany County Sch. Dist. No. 1, 763 P.2d 1255, 1258 (Wyo.1988) (citations omitted). We agree with the district court that Wilkinson applies to this case. In Wilkinson we noted that there were no Oklahoma cases directly on point, see 958 F.2d at 327, so we applied general principles of insurance law and contract interpretation. FDIC cannot demonstrate any meaningful differences between Oklahoma and Wyoming law on this issue. Thus, we have no basis for interpreting the exact same language any differently in the case before us. Therefore, to invoke coverage under the policy, ABC must have submitted notices of potential claims before the end of the policy period or notices of actual claims before the end of the discovery period.
 
 
 7
 The district court erred, however, in dismissing the notice ABC received on November 14 as nothing more than a reminder that coverage would terminate. This interpretation would effectively read out the policy's requirement of thirty days notice before nonrenewal. Because the agreement specifically refers to the need for notice, the notice agreement is not extraneous, but is incorporated into the terms of the policy once issued. "[R]eference in a contract to extraneous writings renders them part of the agreement for indicated purposes." Busch Dev., Inc. v. City of Cheyenne, 645 P.2d 65, 70 (Wyo.1982); see also 17 George J. Couch, Cyclopedia of Insurance Law § 67:168, at 628 (2d rev. ed. 1983) ("there is no merit to a contention that the cancellation notice is an extraneous document, separate and apart from the policy").
 
 
 8
 We assume arguendo that the endorsement extending the policy period fifty-five days to December 13 was effective; even so, we need not address what time on December 13 the policy period expired. In situations in which a local statute requires notice before nonrenewal, if the notice of nonrenewal is not effective before the end of the policy period, the policy is extended until the notice becomes effective. See 18 Couch, supra, § 68.11, at 15 ("Where the insurer fails to comply with statutory notice requirements, the policy coverage continues as if it were automatically renewed."). The same should be true if the agreement itself, rather than a statute, requires such notice. In other words, if notice of nonrenewal is required, the policy period runs either to the end of the period defined in the agreement or until the notice of nonrenewal becomes effective, whichever is later.
 
 
 9
 Here the notice was received on November 14, and it specified that coverage would terminate thirty days from receipt at 12:00 noon standard time.[2] For purposes of calculating the beginning and ending dates of the thirty day period, we see no distinction between notices of nonrenewal and notices of cancellation. In the latter situation, "[w]here the cancellation notice is not to be effective as of a specified date but as of a period of time after the notice, ... the first day should be excluded and the last day included in computing time under a notice of cancellation." 17 id. § 67:162, at 622.[3] "Where the notice specifies the time as of which the cancellation is to take effect, such specification is binding in the absence of any contrary statute or regulation." Id. § 67:168, at 626. Applying these principles to the notice received by ABC on November 14, the first day of the thirty day period was November 15, the last day was December 14, and the specified time was 12:00 noon on that last day. Therefore, even though the policy period ostensibly ended on December 13, the notice of nonrenewal was not effective until 12:00 noon on December 14. Because the policy remained in effect until that time, the notices of potential claims mailed on December 13 were given within the policy period.
 
 
 10
 The district court made no determination as to the adequacy of the notices of potential claims submitted on December 13 by ABC; we leave that for its consideration on remand. The judgments of the district court are REVERSED, and the cause REMANDED to the district court with instructions to enter partial summary judgment in favor of the FDIC with respect to the timeliness of the notices submitted by ABC on December 13, 1985, and for further proceedings consistent with this opinion.
 
 
 
 [1]
 Each suit is against the FDIC because both banks have since failed and been put into receivership with the FDIC
 
 
 [2]
 Under Wyoming insurance law, notice required by statute is effective when mailed. Wyo.Stat. § 26-35-101. However, ACCO specified in the notice that the thirty day period would not begin to run until receipt, so the statute is inapplicable
 
 
 [3]
 ACCO's contention and the district court's ruling that the practice in the insurance industry is to count the day notice is received as the first day is contrary to the generally accepted method. See cases cited in 17 Couch, supra, § 67:162, at 622 n. 10. In the absence of Wyoming case law adopting this position, we do not believe that Wyoming would deviate from the majority rule