**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

———————————————————

LIBERTY MUTUAL INSURANCE
COMPANY,

     Plaintiff - Appellee,

v.

THE CINCINNATI INSURANCE
COMPANY,

     Defendant - Appellant.

No. 24-8077
(D.C. No. 2:23-CV-00172-SWS)
(D. Wyo.)

———————————————————

### ORDER AND JUDGMENT[*]

———————————————————

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **CARSON**, Circuit Judges.

———————————————————

Cincinnati Specialty Underwriters Insurance Company ("Cincinnati") appeals

from the district court's order granting summary judgment in favor of Liberty Mutual

Insurance Company ("Liberty") which declared Cincinnati had a duty to defend

Simon Contractors of Wyoming, Inc. ("Simon") as an additional insured.  Cincinnati

also appeals from the denial of its cross-motion for summary judgment.  After a

thorough review of the record, and having the benefit of oral argument, we agree

———

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

with the district court: under Wyoming law, Cincinnati had a duty to defend Simon. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm**.

**I**

We begin in Part I by describing (A) the contracting parties and the additional insured policy, (B) the factual and procedural history of the underlying personal injury lawsuits, and (C) the factual and procedural history of this declaratory judgment suit. In Part II, we provide the applicable legal standards guiding our de novo review of this diversity case. Thereafter, in Part III, we frame the issue presented on appeal—i.e., whether the district court misinterpreted the additional insured policy. Part IV is our analysis and discussion. And we conclude by affirming in Part V.

**A**

Simon is a general contractor based in Wyoming. Relevant here, Simon was the general contractor for a highway construction project on Interstate 80 between Cheyenne and Pine Bluffs, Wyoming (the "Project").

On January 14, 2018, Simon and S&J Signs, Inc. ("S&J") entered into a subcontract. Thereafter, S&J became one of Simon's subcontractors for the Project. The subcontract is three pages long and contains two dozen provisions. Three are relevant here.

First is the requirement that S&J "obtain and maintain" an insurance policy that "shall name [Simon]" as an additional insured. Aplt.'s App. at 24 (Subcontract, dated Jan. 14, 2018). Second, S&J agreed "[t]o adequately and properly protect" the

2

Project with "lights, barriers, supports and guards." *Id.* The third relevant provision is S&J's agreement to defend Simon against all liability and lawsuits. That provision reads as follows:

> [S&J] agrees to defend, indemnify, protect and save harmless [Simon] and [the State of Wyoming] from and against any and all liability, losses, damages, costs, claims, lawsuits, whether groundless or not, judgments, settlements and expenses, including without limitation attorneys' fees and court costs, arising from bodily injury to any persons, whether employed by [Simon], [S&J] or others, including death, or damage to any property, whether owned, leased or used by [Simon], [S&J] or others, including without limitation, the loss of use thereof, occurring or arising out of or in connection with [S&J's] Work, whether or not occurring or arising out of or claimed to have occurred or arisen out of the concurrent acts, negligence or omissions of [Simon], [the State of Wyoming], their agents or employees.

*Id.*

With respect to the first requirement, S&J obtained its commercial general liability insurance policy through Cincinnati. Simon was named as an additional insured in that policy, as required. In pertinent part, the additional insured policy provides:

> **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, but only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
> 1.    Your acts or omissions in the performance of your ongoing operations for the additional insured;
> 2.    The acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured; or

3

   3.  "Your work" performed for the additional insured and included in the "products-completed operations hazard".

Aplt.'s App. at 51 (Additional Insured Policy, filed Sep. 20, 2023). The additional insured policy also states that the coverage provided "to the additional insured . . . will not be broader than that which you are required by the contract or agreement to provide." *Id.*

In addition to being named as an additional insured in S&J's policy with Cincinnati, Simon also had its own commercial general liability insurance policy through Liberty.

**B**

While the Project was under construction, two tractor-trailer drivers traversing this eleven-mile-long stretch of Interstate 80 were involved in a rollover wreck. Both drivers filed lawsuits. Mr. Gregory Ware filed suit in November 2021. And Mr. Rodney Gibson filed suit in July 2022. Both drivers' lawsuits named Simon and S&J as being responsible for their injuries.

Both drivers' lawsuits alleged (1) the Project's road had steep edge drop-offs and (2) there were no warning signs or barriers. Both drivers also alleged they suffered injuries because of the wreck. And both drivers alleged S&J and Simon were at fault.

Because our later analysis of Wyoming law requires us to determine if a claim "rationally falls within the policy coverage," *Matlack v. Mountain W. Farm Bureau Mut. Ins. Co.*, 44 P.3d 73, 80 (Wyo. 2002) (quoting *Shoshone First Bank v. Pac.*

4

*Emps. Ins. Co.*, 2 P.3d 510, 513 (Wyo. 2000)), the particulars of both complaints warrant some additional discussion up front.

**1**

We begin with Mr. Ware's lawsuit. His complaint started by detailing the contractor and subcontractor relationship between Simon and S&J. Mr. Ware specifically alleged that Simon was the general contractor for the Project and that S&J was the subcontractor. As the subcontractor, S&J "agreed to adequately and properly protect Simon's work . . . by utilizing lights, barriers, supports and guards, so as to avoid injury or damage to persons or proper[t]y." Aplt.'s App. at 34 (Pl. Ware's Compl., dated Nov. 2, 2021). He also alleged the Project "was to be completed on or before October 31, 2019." *Id.* at 33.

After detailing the parties involved, Mr. Ware moved on to discussing the purported problems with the Project. There he claimed, "[t]he asphalt in the construction zone, controlled by Simon [], contained an edge drop off that did not comply with Wyoming Department of Transportation specifications." *Id.* at 31, 34–35. Mr. Ware then went on to allege, "Simon and S&J [] failed to warn drivers" and "failed to erect sufficient barriers." *Id.* at 35. Because of these failures, Mr. Ware said he was "ejected" from the tractor-trailer when his "wheels caught onto the edge drop off . . . . [which] set off a chain reaction." *Id.* at 32.

\* \* \*

Mr. Ware's complaint contained two causes of action—both for negligence. The first claim was against Simon. It alleged (1) Simon owed Mr. Ware a duty of

5

care, (2) Simon violated its duty, and (3) as a result of Simon's negligence, Mr. Ware sustained injuries. The second claim was against S&J. That claim mirrored the first—alleging (1) S&J owed Mr. Ware a duty of care, (2) S&J violated its duty, and (3) as a result of S&J's negligence, Mr. Ware sustained injuries. In closing, Mr. Ware's complaint alleged his injuries were the "direct and proximate result of Defendants' negligent, reckless, willful and wanton acts and omissions." *Id.* at 38.

**2**

We now turn to Mr. Gibson's complaint. He alleged the "truck wreck" was "caused by Defendants' negligence in road construction work and failure to warn." Aplt.'s App. at 42 (Pl. Gibson's Compl., dated July 14, 2022). As for specifics, Mr. Gibson's complaint began by noting Simon and S&J's roles in the Project—i.e., general contractor and subcontractor, respectively. He then alleged that the Project was supposed to be completed "by October 31, 2019." *Id.* at 43. After that, Mr. Gibson alleged S&J "agreed to protect [Simon's] work adequately and properly by using lights, barriers, supports and guards, to prevent injury or damage to persons or property." *Id.* at 44. His complaint claimed "[b]oth defendants failed to warn drivers of any . . . edge drop-offs." *Id.* And finally, Mr. Gibson alleged "[b]oth Defendants failed to erect sufficient barriers to protect drivers from any potential danger." *Id.* at 45.

* * *

The first cause of action in Mr. Gibson's complaint was levied against Simon. The second against S&J. After "repeat[ing] and fully incorporat[ing] all other

6

paragraphs," Mr. Gibson alleged that Simon and S&J (1) owed him a duty of care, (2) breached their duty, and (3) caused his injuries. *Id.* at 46–48. In closing, Mr. Gibson said his "bodily injury" was "caused by Defendants' negligence." *Id.* at 48.

## C

After Mr. Ware's and Mr. Gibson's complaints (i.e., the "underlying lawsuits") were filed, Liberty—on behalf of its insured, Simon—requested that Cincinnati provide a defense to Simon pursuant to the additional insured policy (taken out in accordance with Simon and S&J's subcontract). Cincinnati declined. In its denial letter, Cincinnati told Liberty that the allegations in the underlying lawsuits "do[] not arise out of or have any connection whatsoever to S&J's work." Aplt.'s App. at 56 (Cincinnati Rejection, dated Jan. 14, 2022).

Following Cincinnati's refusal, invoking diversity jurisdiction under 28 U.S.C. § 1332, Liberty filed the instant declaratory judgment action in the District of Wyoming[1] seeking a determination of rights with respect to the additional insured policy. Specifically, Liberty sought (1) a determination regarding Cincinnati's obligations to Simon as an additional insured and (2) a declaration that Cincinnati is contractually obligated to pay the defense expenses already incurred and to be incurred in the defense of Simon. In short, Liberty claimed that Cincinnati

---

[1] The district court's jurisdiction under 28 U.S.C. § 1332 was proper because the parties—Liberty and Cincinnati—are citizens of different states and the amount in controversy exceeded $75,000. Liberty is a Massachusetts corporation with its principal place of business in Massachusetts. And Cincinnati is an Ohio corporation with its principal place of business in Ohio.

wrongfully refused to defend Simon against the underlying lawsuits, and that Liberty thereby incurred expenses in its defense of Simon.

* * *

In June 2024, Liberty moved for summary judgment.  Cincinnati opposed[2] and filed a cross-motion for summary judgment.

Ultimately, the district court granted Liberty's motion for summary judgment and denied Cincinnati's cross-motion.  *See Liberty Mut. Ins. Co. v. Cincinnati Ins. Co.*, No. 23-cv-0172, 2024 WL 4785619 (D. Wyo. Oct. 2, 2024).  The district court held that the allegations in the underlying lawsuits triggered Cincinnati's duty to defend Simon because the injuries had some causal relationship to S&J's acts and omissions.  In so holding, the district court rejected Cincinnati's argument that the underlying lawsuits alleged "independent causes of action" against Simon and S&J such that the allegations were not caused "in whole or in part" by S&J.  *Id.* at *5–7. Final judgment was entered the same day.

Cincinnati now appeals—seeking reversal of the district court's grant of summary judgment for Liberty as well as the denial of its cross-motion for summary judgment.

---

[2]    Although Cincinnati opposed Liberty's motion for summary judgment, the parties agreed there were no facts in dispute.

## II

"We review the district court's grant of summary judgment de novo." *Stenson v. Edmonds*, 86 F.4th 870, 879 (10th Cir. 2023). We also review cross-motions for summary judgment de novo. *M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1264 (10th Cir. 2024) ("We review *de novo* a district court's rulings on cross-motions for summary judgment."). In so doing, we "view[] the evidence in the light most favorable to the non-prevailing party." *Davidson Oil Co. v. City of Albuquerque*, 108 F.4th 1226, 1230 (10th Cir. 2024).

Further, when a lawsuit is predicated on diversity jurisdiction, as here, we "apply the substantive law of the forum state." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). This means "[o]ur 'task is not to reach [our] own judgment regarding the substance of the common law, but simply to "ascertain and apply the state law"' as it exists." *Lawson v. Spirit AeroSystems, Inc.*, 135 F.4th 1186, 1198 (10th Cir. 2025) (second alteration in original) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007)). When applying state law in diversity actions, we "defer to the most recent decisions of the state's highest court." *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).

Here, Wyoming law—in particular, the law as interpreted by the Wyoming Supreme Court—controls this insurance dispute. *See Mid-Continent Cas. Co. v. True Oil Co.*, 767 F.3d 1000, 1004 (10th Cir. 2014) ("We apply substantive Wyoming law in this diversity action."). We do not defer to the district court's interpretation of Wyoming law but rather consider it de novo. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) (concluding a district court's determination of state law is reviewed de novo); *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015) ("[W]e review the district court's interpretation and determination of state law de novo." (quoting *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009))).

In this appeal, then, we "take a 'fresh, independent' look at the question at bar." *United States v. Richards*, 958 F.3d 961, 966 (10th Cir. 2020) (quoting *United States v. Von Behren*, 822 F.3d 1139, 1144 (10th Cir. 2016)); *see Am. Cas. Co. of Reading, Pa. v. Fed. Deposit Ins. Corp.*, 999 F.2d 480, 482 (10th Cir. 1993) (reviewing both summary judgment and the district court's interpretation of Wyoming law de novo).

## III

On appeal, Cincinnati seeks reversal of the district court's grant of summary judgment in Liberty's favor (as well as the district court's denial of its cross-motion for summary judgment). Cincinnati maintains it had "no duty to defend" Simon. Aplt.'s Opening Br. at 10–12, 29. Urging reversal, Cincinnati argues the district court erred by misinterpreting the additional insured policy. In Cincinnati's view, the

10

underlying lawsuits do not establish the tractor-trailer drivers' injuries were "caused, in whole or in part" by S&J's acts or omissions. *Id.* at 25–27. Relatedly, Cincinnati also argues the subcontract's language limits its duty to defend under the additional insured policy.

We disagree and reject each permutation of Cincinnati's argument.

**IV**

Having laid out the factual and procedural history, standard of review, and issue presented, we now apply Wyoming law to the case at hand.

"Under Wyoming law, interpretation of the insurance policy 'is a question for the court to resolve as a matter of law.'" *Marathon Ashland Pipe Line LLC v. Md. Cas. Co.*, 243 F.3d 1232, 1236 (10th Cir. 2001) (quoting *State ex rel. Farmers Ins. Exch. v. Dist. Ct. of the Ninth Jud. Dist.*, 844 P.2d 1099, 1102 (Wyo. 1993)); *see Mem'l Hosp. of Sweetwater Cnty. v. Menapace*, 404 P.3d 1179, 1182 (Wyo. 2017) ("[I]nterpret[ing] an insurance policy . . . is a question of law . . . ."). Insurance policies are "construed in the same way" as a contract under Wyoming law. *State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 765 (Wyo. 1988); *see N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co.*, 362 P.3d 341, 346 (Wyo. 2015) ("Our established rules of contract interpretation apply to insurance policies."). Understanding that the rules of contract interpretation apply to insurance policy disputes is only part of the answer, though. That naturally gives rise to a follow-up question: how does the Wyoming Supreme Court interpret a contract?

Wyoming courts "interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning." *Sweetwater Station, LLC v. Pedri*, 522 P.3d 617, 623 (Wyo. 2022) (quoting *Star Valley Ranch Ass'n v. Daley*, 334 P.3d 1207, 1213 (Wyo. 2014)).  And when a contract's "language is clear and unambiguous, the intention is to be secured from the words of the contract." *Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo.*, 612 P.2d 463, 465 (Wyo. 1980).  Wyoming courts give the words in a contract "their common sense and plain meaning." *Sinclair Wyo. Refin. Co. v. A&B Builders, Ltd.*, 989 F.3d 747, 766 (10th Cir. 2021) (quoting *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refin. Sys., Inc.*, 52 F.3d 901, 903 (10th Cir. 1995)).

\* \* \*

Our analysis comes in three parts.  First, in Part IV.A., we hold the injuries at issue in the underlying lawsuits were alleged to have been caused at least in part by S&J during its ongoing operations.  Then, in Part IV.B., we explain how our decision in *First Mercury* supports the outcome here.  Finally, we (briefly) explain—like the district court did—why the subcontract does not limit the additional insured policy's coverage, *see* Part IV.C.

**A**

The additional insured policy at issue here applies to injuries "caused[] in whole or *in part*" by S&J's "acts or omissions in the performance of [its] *ongoing operations*." Aplt.'s App. at 51 (emphasis added).  On appeal, neither party contends this language is ambiguous.  Likewise, neither party disputes bodily injury is alleged

12

to have occurred. At issue in this appeal is whether the allegations in the underlying lawsuits triggered Cincinnati's duty to defend Simon under the additional insured policy.

We focus our analysis on the policy's "in part" language first. After that, we turn to the plain meaning of "ongoing operations."

**1**

On appeal, Cincinnati argues the claims in the underlying lawsuits involve "independent duties and breaches," such that S&J's acts or omissions were not alleged to have caused the injuries (even in part). Aplt.'s Opening Br. at 11–12. Liberty pushes back, saying "both underlying [lawsuits] expressly contend that S&J caused the[] injuries, at least in part, by failing to erect proper guards, signage, and barriers." Aplee.'s Resp. Br. at 24. We agree with Liberty.

Before examining the facts alleged in the underlying lawsuits to determine if they are "potentially" covered under the Cincinnati policy, *Lawrence v. State Farm Fire & Cas. Co.*, 133 P.3d 976, 981 (Wyo. 2006), we must unpack what "in part" means. Wyoming courts "routinely consult dictionary definitions to ascertain the plain meaning of terms." *Douglas ex rel. Patricia Ann Douglas Revocable Tr. v. Jackson Hole Land Tr.*, 464 P.3d 1223, 1228 (Wyo. 2020) (citing cases). And Wyoming courts also look to dictionaries to ascertain the plain meaning of words in insurance disputes. *E.g.*, *Colo. Cas. Ins. Co. v. Sammons*, 157 P.3d 460, 465, 467–68 (Wyo. 2007) (turning to dictionary definitions to find "the ordinary and usual meaning of [the policy's] terms").

We now turn to the dictionary. In common usage, the phrase "in part" means partially or somewhat. *See In Part*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/in%20part [https://perma.cc/XN2J-EREN] (last visited Apr. 13, 2026) (defining the phrase to mean "partially"); *In Part*, CAMBRIDGE ONLINE DICTIONARY, https://dictionary.cambridge.org/dictionary/english/in-part [https://perma.cc/B46R-UHE9] (last visited Apr. 13, 2026) (defining the phrase as "partly, or to some degree"); *cf. Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 523 (1957) (explaining "in whole or in part" means "any part, even the slightest"). This means the additional insured policy applies if S&J's acts or omissions are alleged to have even partially caused the injuries.

Our review of the undisputed alleged facts convinces us there was a sufficient causal connection alleged between S&J's work and the tractor-trailer drivers' injuries to trigger the additional insured policy (i.e., Cincinnati's duty to defend). *See Reisig v. Union Ins. Co.*, 870 P.2d 1066, 1068 (Wyo. 1994) ("[W]e analyze the duty to defend by examining the facts alleged in the complaint that the claim is based upon." (quoting *First Wyo. Bank, N.A., Jackson Hole v. Cont'l Ins. Co.*, 860 P.2d 1094, 1097 (Wyo. 1993))). The underlying lawsuits' allegations make this clear.

Both Mr. Ware and Mr. Gibson alleged that they sustained injuries because of Simon and S&J's acts and omissions. In Mr. Ware's complaint, he alleged "[t]he acts, errors, or omission of *Defendants* are the actual and proximate cause" of his injuries. Aplt.'s App. at 36 (emphasis added). Prior to this assertion, he blamed

14

"Simon *and* S&J" for their failure to "warn drivers" and "fail[ure] to erect sufficient barriers." *Id.* at 35 (emphasis added). Similarly, Mr. Gibson said he "sustained . . . injuries" because of "*Defendants'* negligence." *Id.* at 42 (emphasis added). His complaint says "*[b]oth defendants* failed to warn drivers of any potential danger." *Id.* at 44 (emphasis added). And he blamed "*[b]oth Defendants*" for their "fail[ure] to erect sufficient barriers." *Id.* at 45 (emphasis added).

Because the underlying lawsuits both allege that the injuries were caused by S&J's failure to warn drivers and provide barriers, *Foote v. Simek*, 139 P.3d 455, 463–64 (Wyo. 2006) (explaining proximate cause), the claims "rationally fall[] within the policy['s] coverage." *Shoshone First Bank*, 2 P.3d at 513. Stated differently, the underlying lawsuits sufficiently allege the injuries were at least partially due to S&J's failure to protect the Project with warnings, lights, and barriers.

Thus, whether Simon was also at fault—as Cincinnati contends—has no bearing on whether the injuries were "in part" S&J's fault. Indeed, "if the negligence of defendant is one of the proximate causes of the injury of which plaintiff complains, he cannot escape liability by showing that the negligence of a third person also contributed to the injury . . . ." *Frazier v. Pokorny*, 349 P.2d 324, 331 (Wyo. 1960) (quoting 4 Blashfield's Encyc. of Auto. Law § 2552 (permanent ed.)).

In light of the above, Cincinnati's argument that the underlying lawsuits separately describe Simon and S&J's obligations is not well taken. Again, both Simon and S&J were named defendants, and both were blamed for various acts and

15

omissions.  So it cannot be fairly said their acts or omissions were "independent" of one another for purposes of assessing the alleged cause of the injuries in the underlying lawsuits.  In fact, by Cincinnati's own admission, S&J's "subcontracted duties" included "erecting signs and barriers to protect Simon's construction work." Aplt.'s Opening Br. at 16.

**2**

Next, Cincinnati argues that the allegations in the underlying lawsuits were unrelated to S&J's "ongoing operations."[3]  Once again, following the Wyoming Supreme Court's lead, we look to the dictionary to unpack the phrase at issue.  And again, the plain meaning of "ongoing operations" weighs against Cincinnati.

"Ongoing" is generally defined as "continuing" or "in progress."  *Ongoing*, THE NEW OXFORD AMERICAN DICTIONARY 1189 (2d ed. 2005); *see also Ongoing*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1576 (2002) (defining the term as something "that is going on," or "making progress").  And "operation" means "a doing or performing esp. of action: WORK, DEED." *Operation*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1580 (2002); *see also Operation*, THE NEW OXFORD AMERICAN DICTIONARY 1193 (2d ed. 2005) ("[A]n active process.").  Taken together, then, "ongoing operations" means S&J's work while the Project was in progress.  *See Eiden Constr., LLC v.*

---

[3]   As a reminder, Cincinnati's additional insured policy applies to "bodily injury . . . caused, in whole or in part, by" S&J's "acts or omissions in the performance of [its] ongoing operations for [Simon]."  Aplt.'s App. at 51.

*Hogan & Assocs. Builders, LLC*, 561 P.3d 304, 328 (Wyo. 2024) (explaining "ongoing" means not yet "complete"); *cf. V-1 Oil Co. v. People*, 799 P.2d 1199, 1203 (Wyo. 1990) (defining "ongoing" as "pending"); *Breen v. Black*, 467 P.3d 1023, 1028 (Wyo. 2020) (likening "ongoing" to "current"). Thus, "[S&J's] acts or omissions in the performance of [its] ongoing operations" means anything work-related that S&J did—or failed to do—in connection with the Project before its completion.

Like the Second Circuit's unpublished decision in *Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co.*, 198 F. App'x 148 (2d Cir. 2006), we decline Cincinnati's invitation to narrowly define "ongoing operations." There, like here, Cincinnati argued an additional insured was not entitled to coverage because the incident purportedly did not arise out of the policyholder's "ongoing operations." *Id.* at 149. Cincinnati argued the phrase requires "*active* work." *Id.* at 150.

The Second Circuit panel held otherwise and explained the operations were ongoing because performance remained undone. *Id.* Indeed, in the commercial liability context, "ongoing operations" means anything occurring "prior to the completion of the work contracted for." *Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1163 (10th Cir. 2014) (citing *Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co., Inc.*, 475 F. Supp. 2d 400, 410 (S.D.N.Y. 2007)).

The same is true here. Because the wreck alleged in the underlying lawsuits occurred prior to S&J's completion of its work for Simon, S&J's operations were "ongoing" (rather than "complete"). *See Eiden Constr., LLC*, 561 P.3d at 328; *see also United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 959

17

(10th Cir. 2011) (noting the ordinary meaning of "ongoing operations" does not cover "completed operations").

* * * * *

At bottom, we agree with Cincinnati that "Simon's status as an additional insured hinges on whether the claims in the [u]nderlying [l]awsuits against Simon were 'caused, in whole or in part, by' S&J's work." Aplt.'s Opening Br. at 12. But for the reasons detailed above, we disagree with the assertion that the allegations regarding "duties to warn, install barriers, and maintain road safety . . . bear no causal connection to S&J's specific scope of work." *Id.* Rather, those allegations fall squarely within S&J's scope of work. After all, S&J agreed "to adequately and properly protect" the Project with "lights, barriers, supports, and guards." *Id.* at 13. At a minimum, the claims in the underlying lawsuits were "potentially covered" under the policy, which is sufficient to trigger Cincinnati's duty to defend. *Shoshone First Bank*, 2 P.3d at 514.

Because the injuries alleged in the underlying lawsuits (1) were in part due to S&J's acts or omissions and (2) occurred prior to the completion of the contracted-for work, Cincinnati had a duty to defend Simon.

**B**

In holding that the underlying lawsuits triggered Cincinnati's duty to defend, the district court found our opinion in *First Mercury Ins. Co. v. Cincinnati Ins. Co.*, 882 F.3d 1289 (10th Cir. 2018) instructive on how to interpret the phrase "in whole or in part." *See Liberty Mut. Ins. Co.*, 2024 WL 4785619, at *4–5. We agree. Our

decision in *First Mercury*—though involving the law of New Mexico, not Wyoming—bolsters our conclusion that the claims in the underlying lawsuits fall within the additional insured policy's coverage here.

Although not authoritative as to Wyoming law, in *First Mercury*, we explained that the phrase "caused[] in whole or in part[] by" simply requires a court to review the allegations in the lawsuits at issue to see if there is a "some causal relationship to the injury." *First Mercury*, 882 F.3d at 1301–02 (interpreting a nearly identical provision under New Mexico law). There, the lawsuit at issue named only the general contractor—not the subcontractor (the insured). Nevertheless, we held that, under New Mexico law, First Mercury had a duty to defend the contractor as an additional insured. *Id.* at 1291–96, 1301–02.

As the district court observed, Wyoming law and New Mexico law "do not materially differ in how [the] courts interpret insurance policy language." *Liberty Mut. Ins. Co.*, 2024 WL 4785619, at *4. An insurer is obligated to provide a defense so long as the claim "is *potentially* covered under the policy." *Shoshone First Bank*, 2 P.3d at 514 (emphasis added). And, if coverage is uncertain, Wyoming courts resolve doubt "in favor of the insured." *Marathon*, 243 F.3d at 1244 (citing *First Wyo. Bank*, 860 P.2d at 1095); *see Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1061 n.2 (Wyo. 1980) ("[A]mbiguity in a complaint for which coverage is claimed should be resolved against an insurance company."). In light of the above, *First Mercury*'s interpretation of "in whole or in part" as requiring "some causal relationship" is persuasive to us in interpreting the meaning of Wyoming law.

19

* * *

Although we have already concluded Cincinnati had a duty to defend because the allegations in the underlying lawsuits rationally fall within the policy's terms, *First Mercury* bolsters this conclusion. Indeed, the facts of this case more clearly trigger the duty to defend than *First Mercury*, where only the general contractor was sued. Here, by contrast, the underlying lawsuits named both Simon and S&J. The underlying lawsuits also alleged specific facts averring that both Simon and S&J were negligent. S&J's acts or omissions have some causal relationship to the injury, then.

### C

Finally, Cincinnati argues the additional insured policy is limited by the subcontract. In Cincinnati's view, because the additional insured policy says coverage "will not be broader than that which you are required by the contract or agreement to provide," Aplt.'s App. at 51, that provision then limits coverage to harm "occurring or arising out of or in connection with [S&J's] Work," as contained in the subcontract. *Id.* at 24. We, like the district court, find this argument unpersuasive.[4]

---

[4] We also note that Cincinnati argues "the phrase 'arising out of' is broader than 'caused by.'" Aplt.'s Opening Br. at 23–24. Having failed to convince us the alleged injuries were not "caused by" S&J under the policy's terms, *see supra* Part IV.A., Cincinnati's own briefing belies the argument it can prevail in light of the subcontract's broader language.

First, "[c]ourts have generally interpreted language such as 'arising from or in connection with' quite expansively," *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1220 (10th Cir. 2021) (citing cases).

Second, the underlying lawsuits make clear the alleged injuries occurred or arose out of or in connection with S&J's work. Indeed, both complaints alleged specific failures by S&J—e.g., the lack of warnings, lights, and barriers. Accordingly, notwithstanding Cincinnati's protestations, we hold the harm-causing actions alleged in the underlying lawsuits occurred or arose out of or in connection with S&J's work.

Third, and finally, even if the injuries occurred solely because of Simon's acts (*viz.*, the road's drop off being too steep), Cincinnati still had a duty to defend. As the district court put it, "The Subcontractor Agreement specifically states that 'whether or not' the harm occurs from Simon's concurrent acts, S&J still has a duty to defend." *Liberty Mut. Ins. Co.*, 2024 WL 4785619, at *6. We agree.[5] And once again, we conclude Cincinnati's duty to defend was triggered.

---

[5] The district court explained that the subcontract's "whether or not" language meant Cincinnati had a duty to defend Simon even if "the harm is alleged to have . . . occurred from Simon's . . . acts." *Liberty Mut. Ins. Co.*, 2024 WL 4785619, at *6. Upon de novo review, we agree with the district court's analysis. Here, the "whether or not" phrase is an unequivocal and unambiguous statement that Simon was entitled to a defense (irrespective of Simon's own negligence).

21

**V**

In sum, we discern no error in the district court's decision.  The harm-causing actions alleged in the underlying lawsuits were rationally related to S&J's work such that Simon was an additional insured under the plain, unambiguous language of the policy.  The underlying lawsuits alleged the injuries that were caused (at least "in part") by S&J's not-yet completed work.  Thus, Cincinnati's duty to defend was triggered.

* * * * *

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.[6]

Entered for the Court

Jerome A. Holmes
Chief Judge

---

[6]    We, likewise, **affirm** the district court's denial of Cincinnati's cross-motion for summary judgment.